Kenneth CARTER, Appellant,

v.

UNITED STATES, Appellee.

No. 85–266.

District of Columbia Court of Appeals.
Argued July 11, 1985.
Decided Aug. 19, 1985.

Michael Lasley, Washington, D.C., for appellant.

Ellen Bass, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty. and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before PRYOR, Chief Judge, and MACK and ROGERS, Associate Judges.

ROGERS, Associate Judge:

Appellant appeals from the denial of a motion to dismiss on the grounds of double jeopardy.[1] During trial, the prosecutor and codefendant moved for a mistrial which was granted. Appellant contends that his retrial, scheduled for July 15, 1985, is barred because the trial judge failed to make a sufficient inquiry to determine if a mistrial was a manifest necessity or to consider alternatives. He also contends the trial judge's failure to voir dire the jury prior to declaring a mistrial violated appellant's right to procedural due process. We affirm.[2]

I

Appellant and a codefendant were charged with robbing Ernest Proctor. D.C. Code § 22-2901 (1981). Trial by jury com-

---

[1] *Abney v. United States,* 431 U.S. 651, 662, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977) (denial of motion to dismiss on double jeopardy grounds is immediately appealable).

[2] By order of July 15, 1985, the judgment was affirmed, noting that an opinion would follow.

menced before Judge Alprin on June 12, 1984. After cross-examination by appellant's counsel, and during cross-examination of the complainant by the codefendant's counsel, the trial judge recessed for lunch. During the recess, the complainant was stopped and questioned by two police officers for allegedly following one of the jurors. The prosecutor advised Judge Alprin of the incident; the judge questioned two of the jurors and the two police officers in the presence of counsel, who were allowed to ask questions.

The inquiry conducted by the trial judge revealed a juror claimed that "one of the defendants" had followed her on the courthouse escalator and down a hallway until she stopped the officers and told them she thought he was following her; at that point he had turned and started walking swiftly in the other direction. The juror offered no basis for her belief other than the fact that she did not know why he was on the corridor where she had gone to get her child in the nursery. She admitted that he had not said anything to her or anyone else nor had he made any threatening gestures. After the incident, about ten police officers escorted the juror and Mr. Proctor back to the hallway outside of the trial courtroom. Other jurors observed this group in the hallway as Mr. Proctor was protesting that he had not done anything.[3] The juror who claimed she had been followed mentioned the incident to another juror in the jury room within the hearing of most of the jurors. The second juror stated she believed that the entire jury knew about the incident.

The two officers confirmed that the juror had been concerned about the person who was following her and that Mr. Proctor had quickly moved in the opposite direction on the fourth floor when the juror had pointed to him. One officer followed Mr. Proctor, who had entered an elevator, and the other said that when they had returned to the hallway outside of the courtroom, Mr. Proc-

tor was "hollering loud" and he was concerned about the jurors' safety.

After hearing the first juror, the codefendant's counsel moved for a mistrial on the ground that the juror had referred to Mr. Proctor as the defendant. The government joined the motion on the ground of manifest necessity. Appellant's counsel advised the judge that he was not requesting a mistrial "at this time," suggesting instead that since there were two alternate jurors, it would be appropriate for the judge to determine if any other juror was tainted so that person could be excused, and "if necessary" to question each juror to determine the extent of the taint. After the judge and counsel questioned the second juror and one of the police officers, the judge inquired of counsel who was moving for a mistrial; the prosecutor and codefendant reaffirmed they were, appellant's counsel said he was not. The judge confirmed this after hearing from the second police officer, and then granted the motions for a mistrial, stating "whatever the double jeopardy ramification of this action may be, we'll have to leave to a later date. There's no way I conclude that the jury is not tainted at this point."

Appellant's counsel did not object or renew his request to question the jurors further. After dismissing the jury, the judge elaborated upon his reasoning in granting the mistrial, stating that "whatever the truth of the matter," "[j]uror No. 1 did have somewhat of a confrontation with the complaining witness and did talk about it, with at least one other member of the jury, in the presence of at least some of the members of the jury, and that so far as I can see would irrevocably taint the jury and make a fair trial for both sides in this trial, impossible. That's why I declared a mistrial." On October 1, 1984, appellant moved to dismiss the charges on the grounds of double jeopardy; this motion was denied on January 24, 1985 by Judge Wolf.

---

**3.** Mr. Proctor claimed he merely got lost in finding his way to the U.S. Attorney's Office.

## II

The Double Jeopardy Clause of the Fifth Amendment ensures not only the finality of criminal judgments and protects against multiple punishments for the same offense, but also safeguards a defendant's obvious interest in avoiding the burdens of a second trial when his first trial was unnecessarily aborted before judgment. *Douglas v. United States*, 488 A.2d 121, 130 (D.C.1985). For Fifth Amendment purposes, jeopardy attaches as soon as the jury is empaneled and sworn, *Routh v. United States*, 483 A.2d 638, 642 (D.C. 1984) (citing *Illinois v. Somerville*, 410 U.S. 458, 466–67, 93 S.Ct. 1066, 1071–72, 35 L.Ed.2d 425 (1973)), and, at that point, a defendant has a "valued right to have his trial completed by a particular tribunal." *Arizona v. Washington*, 434 U.S. 497, 503 & n. 11, 98 S.Ct. 824, 829 & n. 11, 54 L.Ed.2d 717 (1978); *see generally Douglas, supra*, 488 A.2d at 130–31. Although that right may become subordinate to the public interest in affording the prosecutor "one full and fair opportunity to present his evidence to an impartial jury," the government bears the heavy burden of demonstrating " 'manifest necessity' for any mistrial declared over the objection of the defendant." [4] *Arizona v. Washington, supra*, 434 U.S. at 505, 98 S.Ct. at 830; *see United States v. Perez*, 22 U.S. (9 Wheat) 579, 580, 6 L.Ed. 165 (1824) ("manifest necessity for the act, or the ends of public justice would otherwise be defeated.").

Although no mechanical rule for determining manifest necessity exists, *United States v. Jorn*, 400 U.S. 470, 480, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971), it is well recognized that whether the high degree of necessity required has been reached is answered more easily in some cases than others. *Arizona v. Washington, supra*, 434 U.S. at 507, 98 S.Ct. at 831. When courtroom errors or other developments at trial make a just judgment impossible, the public's interest in maintaining the integrity of the criminal justice system may outweigh the defendant's interest in obtaining a judgment, and a mistrial without the defendant's consent will not bar reprosecution. *Douglas, supra*, 488 A.2d at 131.

A finding of manifest necessity is within the sound discretion of the trial court, *Coleman v. United States*, 449 A.2d 327, 328 (D.C.1982), but in reaching its decision the trial court must go through a two-step inquiry. *Douglas, supra*, 488 A.2d at 132. First, the court must determine whether a trial development gave rise to such a high degree of necessity as to require termination of the trial. *Id.* (citing *Braxton v. United States*, 395 A.2d 759, 769 (D.C.1978)). Second, even where the trial court finds manifest necessity to exist, it must determine whether an alternative measure less drastic than a mistrial could alleviate the problem so the trial can continue to an impartial verdict. *Id.; see Jorn, supra*, 400 U.S. at 487, 91 S.Ct. at 558. A reviewing court can reverse the trial court only for an abuse of discretion. *Routh, supra*, 483 A.2d at 642 and cases cited therein.

The kinds of trial problems that may warrant a mistrial vary in their amenability to appellate scrutiny. *See Arizona v. Washington, supra*, 434 U.S. at 506, 98 S.Ct. at 830. For example, a judge's decision to grant a mistrial based on the jury's inability to agree is accorded great deference, *id.* at 509–10 & n. 28, 98 S.Ct. at 832–33 & n. 28, while the strictest scrutiny is appropriate for prosecutorial harassment or unavailability of critical evidence. *Id.* at 508, 98 S.Ct. at 831. No prosecutorial misconduct occurred here; the trial court specifically found that "[n]obody on behalf of the government told Mr. Proctor to follow that juror." [5] But where the judge's deci-

---

4. A motion by the defendant for a mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error.

*Anderson v. United States*, 481 A.2d 1299, 1300 (D.C.1984) and cases cited therein.

5. Appellant concedes there is no prosecutorial misconduct within the meaning of *Oregon v.*

sion to grant a mistrial is based on the ground that the jury's impartiality has been affected, the trial court's decision is entitled to "special respect." *Routh, supra,* 483 A.2d at 642 (citing *Arizona v. Washington, supra,* 434 U.S. at 510–11, 98 S.Ct. at 832–33 ("highest degree of respect to trial judge's evaluation of likelihood that impartiality of one or more jurors may have been affected")); *see United States v. Walker,* 557 F.2d 741, 744 (10th Cir.1977).

Appellant acknowledges this special respect to be accorded the trial judge's decision, but argues that the trial judge abused his discretion by not making a sufficient inquiry whether manifest necessity existed, by not considering alternatives to a mistrial and by not allowing counsel to argue the mistrial motion. Specifically, appellant contends that the trial court should have conducted a voir dire of each member of the jury to determine the extent of their knowledge of the episode between the juror and Mr. Proctor and the subsequent extent of their prejudice or bias and against whom. Without such information, appellant contends, the record is silent as to the actual, as opposed to the presumed, bias of the jury.

■ Assuming without deciding that appellant did not acquiesce in the grant of the mistrial,[6] we hold the trial judge did not abuse his discretion. The basis for the trial judge's grant of a mistrial is adequately disclosed by the record, *Douglas, supra,* 488 A.2d at 134; *Arizona v. Washington, supra,* 434 U.S. at 516–17, 98 S.Ct. at 835–36; *Braxton, supra,* 395 A.2d at 769, and supports his determination that manifest necessity existed and lesser alternatives would not suffice. *Douglas, supra,* 488 A.2d at 134 (citing *Braxton, supra,* 395 A.2d at 769).

■ First, the trial judge made a sufficient inquiry regarding the extent of jury

bias before declaring a mistrial. The judge asked questions of the two jurors and the police officers principally affected. The answers revealed that other jurors had heard of the incident, and that most of the jurors had observed the juror who claimed she was followed, Mr. Proctor, and numerous police during the commotion in the hallway. The judge could fairly conclude that other jurors, if not the entire jury, knew a juror thought that Mr. Proctor had followed her and that she was concerned as a result. Under the circumstances, further questioning of other jurors would have been cumulative. Once it became clear to the trial judge that "the entire panel may be tainted," *Arizona v. Washington, supra,* 434 U.S. at 512, 98 S.Ct. at 833, further questioning would not have removed the taint, but might even have exacerbated the situation. This was not an innocuous incident where mere knowledge was unlikely to have an impact on the jurors. Moreover, given the juror's confusion about whether Mr. Proctor was a defendant, the record provides support for the conclusion that both sides were prejudiced. *Douglas, supra,* 488 A.2d at 134.

■ That other trial judges facing different situations have questioned additional jurors does not, contrary to appellant's contention, based on *Waller v. United States,* 389 A.2d 801, 806–07 (D.C.1978), *cert. denied,* 446 U.S. 901, 100 S.Ct. 1824, 64 L.Ed.2d 253 (1980), compel a conclusion that Judge Alprin failed to make a sufficient inquiry. As pointed out in *Douglas, supra,* 488 A.2d at 133, ours is not a *"de novo* consideration of the 'manifest necessity' issue." There we stated:

A reviewing court ordinarily will accept a trial judge's determination that there is a "high degree of necessity" for a mistrial, without a less drastic alternative, as long as that determination is reasonable.

---

*Kennedy,* 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416 (1982).

**6.** *See, e.g., Anderson v. United States,* 481 A.2d 1299, 1301 (D.C.1984) ("Having raised the issue of prejudice, defense counsel did not fulfill her

obligation to make her ultimate position clear."); *United States v. Sedgwick,* 345 A.2d 465, 473 (D.C.1975), *cert. denied,* 425 U.S. 966, 96 S.Ct. 1751, 48 L.Ed.2d 210 (1976).

This is true even when the reviewing court is aware that, if presented with the question in the first instance, other trial judges—or the reviewing court itself—might well be persuaded to continue with the trial." *See Arizona [v. Washington]*, [supra,] 434 U.S. at 509–10 [98 S.Ct. at 832–33;] [U.S. v.] *Sedgwick*, [supra,] 345 A.2d [465] at 472. [citations omitted].

■ Second, the trial judge did not abuse his discretion by not considering less drastic alternatives. The record reveals that most if not all of the jury had heard of the incident. For reasons previously discussed, we conclude that, having heard of the circumstances of the incident from four witnesses and counsels' views, the judge was not unreasonable in considering a mistrial the only answer.

Finally, the record demonstrates counsel were given an adequate opportunity to question the jurors and express their concerns to the judge, the latter being a factor emphasized in *Arizona v. Washington, supra,* 434 U.S. at 515–16, 98 S.Ct. at 835–36. Appellant's reliance on cases where no jurors were questioned and counsel was not given an opportunity to argue before the trial court prior to the mistrial is misplaced. *See United States v. Starling,* 571 F.2d 934 (5th Cir.1978); *Scott v. United States,* 412 A.2d 364 (D.C.1980); *Johnson v. United States,* 389 A.2d 1353 (D.C.1978); *Wilson v. United States,* 380 A.2d 1001 (D.C. 1977).

Accordingly, the judgment is

*Affirmed.*