OPINION OF THE COURT
Bellacosa, J.
The Appellate Division judgment, premised on a Federal double jeopardy bar, grants prohibition against further criminal proceedings on an indictment (161 AD2d 70) and should be affirmed. The unusual developments of this case do not lend themselves to neat categorization within double jeopardy parlance or principles.
The 17-year-old defendant was tried for attempted murder in the second degree and related offenses. After eight hours of deliberation which included a dinner break, the jury reported to the trial court that it was deadlocked. The court gave a "mild Allen” charge (Allen v United States, 164 US 492) and *496 the jurors resumed deliberations. The Trial Justice then conveyed to defendant’s counsel what he characterized as "reliable” information: that the jury was voting to convict by a 10-to-2 margin. In fact, the opposite was true: the jury was 10-to-2 to acquit. The misinformation, it was later learned, was reported to the Trial Justice by a court officer who had accompanied the jurors to dinner and concluded, based on observations alone, that they were split 10 to convict and 2 to acquit. The Trial Justice, while cautioning defendant that the information was speculative, nonetheless named the two jurors he believed were leaning towards acquittal. The court suggested that it would be a "long night” and that the parties might wish to talk about a guilty plea.
Defendant conferred with his counsel and parents. His lawyer advised him — based on the erroneously and improperly conveyed information regarding the still deliberating jury’s reported tentative vote — that the two "acquittal” jurors could change their vote and convict on the highest count. Counsel advised that it was more likely that the jury would remain deadlocked or would render a compromise verdict. Counsel also advised defendant that if at any time the deliberating jury returned a verdict while he was considering the plea, the plea option and the accompanying potential for a shorter sentence would be lost.
Defendant continued to assert his innocence but believed that he had no chance for an acquittal and that he was facing a lengthy prison sentence. He agreed to plead guilty to the third count, criminal use of a firearm in the first degree, in full satisfaction of the indictment. The Trial Justice refused to accept an Alford plea (North Carolina v Alford, 400 US 25), but executed what he termed a "painless allocution” requiring that defendant merely say "Yes” to the court’s questions to obtain court approval of the plea bargain. The late night guilty plea was then recorded. After the jury was discharged, the foreperson reported promptly and later provided an affidavit that the jury had actually been leaning 10-to-2 in favor of acquittal. A second juror confirmed this vote status in an affidavit, emphasizing that "[t]he overwhelming sentiment was for acquittal.” Defendant immediately moved to withdraw his guilty plea two days after the trial was aborted, at which time the same Trial Justice admitted that defendant and his counsel "may have been misled” by the court’s inaccurate communication. The motion was granted and the plea vacated.
Defendant later moved also to preclude retrial on double *497 jeopardy and due process grounds. The same Trial Justice, in denying this motion, conceded that his communication during the jury’s deliberation regarding the tentative vote had been "ill-advised,” but explained he had thought the information would be "useful” and "helpful” to the defendant.
These facts and this case are resolved under elemental double jeopardy principles and are not controlled by any particular precedent. Defendant was unquestionably placed in jeopardy by the trial and deliberation of the particular jury which had held his fate in its hands (United States v Jorn, 400 US 470, 479-480; Green v United States, 355 US 184, 188; Wade v Hunter, 336 US 684, 688). Defendant was constitutionally entitled to that jury’s resolution of his guilt or innocence (Wade v Hunter, supra, at 689; United States v Jorn, 400 US, at 484-485, supra). Defendant did nothing to set in motion the interruption and termination of that fundamental right (compare, Oregon v Kennedy, 456 US 667; United States v Dinitz, 424 US 600). The court, by its own explanation, initiated the termination of the right to a verdict from that particular jury.
The trial court’s candid acknowledgement of inadvertent error and attempt to rectify the harm done, by vacatur of the guilty plea and judgment of conviction on which the plea was based did not and could not restore the defendant to the status quo ante. Defendant’s right to have the particular deliberating jury resolve his fate was forever lost. The vacatur of a guilty plea in this circumstance is not at all similar to other typical relief sought by and granted to defendants from trial or appellate courts, which permit further proceedings on an indictment (compare, United States v Ball, 163 US 662; United States v Dinitz, 424 US 600, 607-610, supra).
This egregious situation, it must be stressed, does not present a dry, theoretical or academic discourse about double jeopardy principles. This case keys into the most sensitive, highly pressurized moment of a hotly contested trial: a deliberating, tentatively deadlocked, about-to-be-sequestered-overnight jury, presided over by a highly experienced Justice. The "spontaneous” plea "offer” in these circumstances, delivered with incorrect data about the tentative 10-to-2 conviction vote of the deliberating jury, when bolstered by the full weight and authority of the court, was an offer that defendant could not seriously refuse. Defendant, deprived of the freedom of will necessary for a knowing and voluntary plea, was unquestionably entitled to vacatur of his guilty plea.
*498 The termination of a trial without a defendant’s request or consent triggers the double jeopardy bar against reprosecution except in those exceptional cases where "manifest necessity” compelled the termination (Oregon v Kennedy, 456 US, at 672, supra; Arizona v Washington, 434 US 497, 509; Illinois v Somerville, 410 US 458, 463; United States v Jorn, 400 US, at 481, supra; Gori v United States, 367 US 364; United States v Perez, 9 Wheat [22 US] 579). No one dares claim that this trial was interrupted by a "manifest necessity”. Rather, like a court’s sua sponte declaration of mistrial, the invalidly induced guilty plea here deprived defendant of his fundamental right to have the particular deliberating jury determine his fate (see, United States v Jorn, supra, at 484).
United States v Tateo (377 US 463) does not compel a contrary conclusion. In Tateo, the Supreme Court determined that defendant’s guilty plea — later vacated — had been coerced by the Trial Judge’s midtrial threats that if defendant were convicted by the jury he would impose a life sentence (id., at 464). The Supreme Court concluded that the case was controlled by the principles in United States v Ball (163 US 662, 671-672) and its progeny which permit retrial where defendant prevails on appeal, reasoning in Tateo that "[a] defendant is no less wronged by a jury finding of guilt after an unfair trial than by a failure to get a jury verdict at all” (377 US, at 467). Subsequent Supreme Court cases cast considerable doubt on the generality of that assertion. What has emerged as the "important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of [judicial or prosecutorial] error” (United States v Dinitz, 424 US 600, 609, supra). Indeed, in United States v Jorn (400 US 470, supra), the Supreme Court emphasized that "the crucial difference between reprosecution after appeal by the defendant and reprosecution after a sua sponte judicial mistrial declaration is that in the first situation the defendant has not been deprived of [the] option to go to the first jury and, perhaps, end the dispute then and there with an acquittal [whereas, in the second situation] where the judge, acting without the defendant’s consent, aborts the proceeding, the defendant has been deprived of [the] 'valued right to have [the] trial completed by a particular tribunal’ ” (id., at 484). The Supreme Court concluded that Tateo fits into the first category and, thus, made a distinction between "voluntariness” for purposes of assessing the validity of a guilty plea and for purposes of *499 assessing reprosecutability under the Double Jeopardy Clause (400 US, at 484-485, n 11, supra).
In the case before us, the trial court’s inducement of defendant’s guilty plea so completely deprived defendant of the option to take his chances with the particular jury that the termination of his trial while the jury was deliberating his fate is the legal equivalent of the situation in Jorn for purposes of assessing reprosecutability under the Double Jeopardy Clause. In both instances, the trial courts eliminated the defendants’ fundamental right to have their trials completed by their particular tribunals (United States v Jorn, 400 US, at 484, supra; Wade v Hunter, 336 US, at 689, supra).
Because the guilty plea in this case inextricably and necessarily cut off any chance for defendant to obtain a resolution from that jury, and because a new trial cannot restore that fundamental right, vacatur alone of the guilty plea did not and could not proportionately remedy the violation. The Trial Justice’s statements to defendant and his counsel so thoroughly permeated defendant’s assessment of his chance for resolution from that jury that he was left bereft of his constitutionally protected option.
An overarching feature of this case is also concern for the integrity of the jury deliberation process. It was adversely affected here, at least perceptually. The information imparted by the Trial Justice gave the erroneous impression that the confidentiality of the deliberations had in some manner been officially penetrated. Such activity cannot be countenanced (People v Bouton, 50 NY2d 130).
The Appellate Division correctly concluded that a separate, successive prosecution could not be allowed in the circumstances of this case. We emphasize that we do not, by this decision, intend to engender any disincentive to Trial Justices fulfilling their sworn duty as they see fit — as the Trial Justice did here in vacating a patently improper guilty plea — regardless of the eventual and potential constitutional consequences and legal denouement.
Accordingly, the judgment of the Appellate Division should be affirmed, without costs.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Judgment affirmed, without costs.