Harvey L. JOHNSON, Appellant,

v.

UNITED STATES, Appellee.

No. 97–CM–1590.

District of Columbia Court of Appeals.

Submitted March 9, 1999.
Decided Feb. 24, 2000.

Kelé Onyejekwe, appointed by the court, was on the brief for appellant.

Wilma A. Lewis, United States Attorney, and John R. Fisher, Elizabeth Trosman, and Jonathan N. Rosen, Assistant United States Attorneys, were on the brief for appellee.

Before TERRY and RUIZ, Associate Judges, and PRYOR, Senior Judge.

TERRY, Associate Judge:

Following a non-jury trial, appellant Johnson was convicted of possession of marijuana, in violation of D.C.Code § 33–541(d) (1998). On appeal he contends that the trial court failed to conduct an adequate inquiry into his mid-trial claim of ineffective assistance of counsel and committed reversible error when it granted a blanket Fifth Amendment privilege to Quentin Mims, the sole defense witness in the case. We find no error and accordingly affirm.

I

On February 19, 1997, two Metropolitan Police officers approached a car parked behind a house in the 500 block of Hobart Place, N.W.[1] Appellant Johnson was in the driver's seat, and Quentin Mims was in the front passenger seat. A third man, not further identified, was in the back seat. As Officer Charles Woodard approached the car, he detected the smell of marijuana and saw a "blunt"[2] and a box of four ziplock bags containing a substance which appeared to be marijuana in the console between the two front seats. When con-

---

1. There is no transcript of the government's evidence in the record on appeal. Our synopsis of that evidence, therefore, is based largely on the factual summaries in the briefs and on such facts as we can glean from the limited record before us. There appears to be no dispute between the parties concerning the evidence that the trial court heard.

2. A "blunt" is a type of cigar which is sometimes stuffed with marijuana.

fronted, Johnson told the officer that both the marijuana and the car belonged to him.

At trial, defense counsel offered evidence[3] showing that Mims had exclusive control of the automobile for over two hours prior to the arrest, and that Johnson had just gotten into the car when the police arrived. This evidence, counsel argued, would demonstrate that any one of the three people who were found in the car could have had control of the marijuana that was also found there. The court rejected this defense, however, on the ground that Johnson could have possessed the drugs jointly and severally with either or both of the other two occupants. Taking into account Johnson's proximity to the marijuana and his statement acknowledging that the marijuana was his, the court found him guilty as charged.

## II

After the government concluded its case in chief, defense counsel made a motion for judgment of acquittal, which was denied. The court then instructed counsel to begin presenting his defense. Johnson interrupted, saying, "Whoa, whoa, whoa. I want to address this court because something ain't right ...." Further inquiry revealed that Johnson was dissatisfied with the quality of the legal representation he was receiving. The court had been alerted to this possibility a few minutes earlier (shortly after the "Whoa, whoa" outburst) when defense counsel related that, until the day of trial, Johnson had thought he was being charged with possession with intent to distribute rather than simple possession.

The prosecutor, citing *Scott v. United States*, 619 A.2d 917 (D.C.1993), suggested that the court apply the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in addressing Johnson's mid-trial claim of ineffective assistance of counsel. The court initially declared that it would not hear

any arguments about ineffectiveness because Johnson had failed to raise the issue before the trial began. As for the government's suggestion to follow *Strickland*, the court concluded:

> I think that *Scott* simply indicates the appellate standard for ineffective assistance of counsel when it is raised mid-trial and that, as *Scott* says, once the jury is sworn—and in this case once a witness is sworn—there is no more issue, period. And I believe that the appropriate course is ... to complete the trial and, based on the outcome of the trial, the defendant may assert whatever rights he believes are appropriate with respect to ineffective assistance of counsel.

After additional discussion, however, the court decided to inquire further into Johnson's claim of ineffective assistance. That inquiry, much of which was conducted *ex parte* in the adjacent jury room with the prosecutor absent, revealed that between Johnson's arraignment on February 20 and his trial on June 12, the only contact between Johnson and his appointed counsel consisted of a telephone call on the night before the trial began. According to Johnson, he did not even know the offense with which he had been charged until the start of the trial. He also complained that his counsel had made no effort to secure witnesses to testify on his behalf. The only reason that Mr. Mims was available to testify on the day of trial was that when Mims had gone to visit Johnson at his house earlier that morning, Johnson's mother had told him that her son was in court. Johnson also said he had told his attorney about two other witnesses who could testify that he was inside the house until just before the police arrived, and had only just entered the automobile when he was arrested. He had asked counsel to request a continuance so that these wit-

---

**3.** The record does contain a partial transcript of the defense portion of the trial.

nesses could be located and prepared to testify, but counsel had failed to do so.[4]

The court then turned its attention to how these alleged deficiencies in counsel's pre-trial performance might have affected his actual performance at trial. The court found that Johnson was not prejudiced by counsel's apparent lack of preparation because Johnson had been able to convey sufficient information to him when they spoke on the phone and also when they met briefly before trial, and counsel had been able to make use of that information during cross-examination. The court also ruled that the attorney's decision not to contact the other witnesses identified by Johnson was a reasonable tactical choice because their testimony would have had no bearing on the question of his guilt or innocence. According to the court, if the witnesses were going to testify that certain people got out of the car before Johnson got in, such testimony would be helpful. However, since Johnson could be convicted on the theory that he jointly possessed the marijuana with the two people already in the car, it did not matter that he had just entered the car before the police arrived. In the end, the court concluded that although the level of communication between attorney and client could probably have been better, counsel's performance at trial was not constitutionally deficient.

■ On appeal, Johnson does not actually claim that he was denied his right to the effective assistance of counsel. Instead, he contends that the court did not conduct "a full and adequate inquiry" into the effectiveness of his trial counsel when that issue was raised in the middle of the trial. Johnson argues that a mid-trial claim of ineffective assistance should be governed by a less stringent standard than that established in *Strickland*, and that the court's inquiry should focus on the "quality of communication between the lawyer and the client," without regard to its prejudicial effect (if any) on the proceedings. This proposal has no support whatever in the relevant case law, and we decline to adopt it.

■ It is true that when a defendant raises a claim of ineffective assistance of counsel before trial begins, the trial court must usually conduct an inquiry into the defendant's allegations. *See Monroe v. United States*, 389 A.2d 811 (D.C.), *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978); *Farrell v. United States*, 391 A.2d 755 (D.C.1978). The standard by which such pre-trial claims of ineffective assistance are measured is whether counsel's representation is "within the range of competence demanded of attorneys in criminal cases." *Monroe*, 389 A.2d at 819 (citing *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). But "once jeopardy attaches, *Monroe* and *Farrell* are no longer applicable." *Scott*, 619 A.2d at 922; *accord, e.g., Moctar v. United States*, 718 A.2d 1063, 1064–1066 (D.C.1998). From that point on, the two-pronged *Strickland* standard (deficient performance and resulting prejudice) applies. *See Scott*, 619 A.2d at 922.[5]

4. Johnson also faulted his attorney's cross-examination of Officer Woodard and complained that counsel should have filed a "suppression motion." On the latter point, however, it appeared that Johnson's real interest was in discovery, not challenging the statement itself. He told the court that he had asked his attorney earlier in the trial why there had been no motion to suppress "any statements or anything ... just to find out what the government got." Counsel in turn had told him that such a motion was unnecessary because "they told me what they got." Counsel then read to Johnson the statement that was later introduced into evidence (*i.e.,*

the admission that the drugs and the car were his). As for the cross-examination of the officer, we have no way of assessing that because Johnson has seen fit not to provide us with a transcript of the officer's testimony, and he must bear the consequences of its omission from the record. *See Cobb v. Standard Drug Co.*, 453 A.2d 110, 111 (D.C.1982).

5. Since this was a non-jury trial, jeopardy attached when the first witness was sworn and began to testify. *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975); *Mason v. United States*, 346 A.2d 250, 251 (D.C.1975).

Both parties proceed on the assumption that a trial court is under a duty to conduct *some* inquiry into a defendant's mid-trial claim of ineffective assistance of counsel; they disagree only as to the scope of that inquiry and the correct standard to be applied. The trial court, on the other hand, seemed to understand that a mid-trial inquiry was not required, but then went ahead and conducted one anyway. In order to dispel any confusion that may arise in future cases, we now hold that once jeopardy attaches in a criminal trial, any subsequent allegation of ineffective assistance should usually be addressed in a post-trial motion or on appeal (or both), where the *Strickland* standard can be applied in its proper context.

The only cases in which we have recognized a duty to conduct an immediate inquiry into allegations of inadequate representation that are raised *during* trial are those in which it appears that counsel's performance may be affected by a conflict of interest. *See, e.g., Witherspoon v. United States,* 557 A.2d 587, 590 (D.C. 1989); *Singley v. United States,* 548 A.2d 780, 786 (D.C.1988); *Douglas v. United States,* 488 A.2d 121, 136 (D.C.1985). In such cases, as in those involving pre-trial claims of ineffective assistance, the trial court is not required to consider the possible prejudicial effect on the outcome of the trial. *See, e.g., Farrell,* 391 A.2d at 760–762. Instead, when a claim of ineffectiveness is premised on an alleged conflict of interest, the test to be applied in analyzing that claim is merely whether "a conflict of interest actually affected the adequacy of [counsel's] representation ...." *Cuyler v. Sullivan,* 446 U.S. 335, 349–350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *accord, e.g., Singley,* 548 A.2d at 786. The

*Strickland* test, by contrast, requires the defendant to demonstrate not only deficient performance but also "a reasonable probability that, but for counsel's unprofessional errors, *the result of the proceeding would have been different.* A reasonable probability is a probability sufficient to undermine confidence in the *outcome."* *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052 (emphasis added). The problem with applying the *Strickland* test in the middle of an ongoing trial is that the "result" or "outcome" of the proceeding has yet to be determined. Thus the trial court would be required to assess prospectively the likely prejudicial effect of counsel's alleged errors before it has had an opportunity to hear all the evidence in the case, and before the jury, if there is one, has even begun to deliberate.[6]

Of course, just as we do not adopt a rule mandating mid-trial inquiries into ineffective assistance claims, neither do we categorically preclude them. Rather, we leave the determination of whether to conduct such an inquiry in the sound discretion of the trial judge. We assume that in most cases the judge will defer any inquiry until after the trial is over so that the *Strickland* test can be properly applied, unless it appears to the judge that some remedial action needs to be taken immediately.[7] We expect that such cases will be rare, but we leave it to trial judges to identify them in the first instance.

### III

After the government rested its case, defense counsel called Quentin Mims to the stand to be the sole witness on Johnson's behalf. Mims testified that he took possession of the car at 3:30 p.m. on the day in question and had exclusive posses-

6. This approach would be particularly unworkable when, as in the case at bar, a claim of ineffective assistance is raised after the government concludes its case in chief but before the defense presents its case.

7. It might be appropriate, for example, for a trial court to declare a mistrial when it is so

obvious that a defendant has been denied his right to the effective assistance of counsel as to make post-conviction relief on that ground all but inevitable. In such a case, going ahead with the trial would only waste valuable time and judicial resources.

sion of it until 6:00 p.m., during which time he had some repair work done on it. At about 6:00 p.m., he briefly left the car behind the house on Hobart Place, where Johnson was giving an estimate for some work to be performed. When he returned, Johnson had gotten into the driver's seat, and a third man climbed into the back seat while Mims sat down in the front passenger seat. Immediately thereafter, the police arrived and arrested them all.

Counsel then asked Mims whether he had placed any drugs inside the car that day. Mims replied that he would "plead the Fifth on that one." The trial court interrupted and ordered that separate counsel be appointed for Mims. When the questioning resumed, Mims once again asserted his Fifth Amendment privilege. Johnson's counsel then shifted focus and asked Mims whether he had seen the third man in possession of any marijuana, but the court ruled that this testimony would also be covered by Mims' privilege against self-incrimination, since Mims could still be liable on a theory of joint possession. Since the government had already attempted to arraign Mims for this offense on two occasions, the court observed, it was fairly certain that Mims would eventually be prosecuted for his part in the crime. The court ruled, therefore, that Mims had a blanket privilege against self-incrimination. Because this privilege effectively precluded the government from conducting any relevant cross-examination, the court ordered Mims' entire testimony stricken from the record.

Johnson contends that the trial court erred in granting Mims a blanket Fifth Amendment privilege and striking all of his testimony. Specifically, he maintains that when, in his initial testimony, Mims admitted to exclusive possession of the automobile for three hours prior to the arrest, he thereby waived his Fifth Amendment privilege.

■ The right of a defendant in a criminal trial to call witnesses in his own defense has been called "an essential at-tribute of our adversarial system, fundamental to a fair trial, and basic to due process of law." *Littlejohn v. United States,* 705 A.2d 1077, 1082 (D.C.1997) (citations omitted). Nevertheless, that right is not absolute; in particular, it may be overcome when it "collide[s] with the Fifth Amendment right of a trial witness" to be free from compulsory self-incrimination. *Carter v. United States,* 684 A.2d 331, 335 (D.C.1996) (en banc). "In the crunch, when all else fails, the Fifth Amendment privilege of the witness prevails over the defendant's right to compel him to testify." *Wilson v. United States,* 558 A.2d 1135, 1140 (D.C.1989) (citations omitted). The witness' privilege, however, applies only "to those specific questions to which his answers would incriminate him." *Id.* at 1141. Therefore, as a general rule, when a witness' invocation of his Fifth Amendment privilege conflicts with a defendant's right to compulsory process under the Sixth Amendment, the trial court must "rule on the claim of privilege one question at a time." *Harris v. United States,* 614 A.2d 1277, 1282 (D.C.1992); *accord, e.g., Wilson,* 558 A.2d at 1140. "A blanket privilege may be granted to the witness only when it is evident to the court that anything less will not adequately protect him." *Littlejohn,* 705 A.2d at 1083 (citations omitted).

■ In this case, we conclude, the trial court was correct when it ruled that anything Mims might have said about his presence in the automobile and his knowledge of how the marijuana got there fell within his privilege against self-incrimination. The privilege extends to any statements which may provide a "link in the chain of evidence" needed to support a conviction, *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951), and "protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States,* 406 U.S. 441, 445, 92 S.Ct. 1653, 32 L.Ed.2d

212 (1972); *accord, Littlejohn,* 705 A.2d at 1083.[8]

Under this standard, any questions requiring Mims to acknowledge that he was in the car on the day in question, or that he knew anything about the marijuana or its origin, would have implicated his Fifth Amendment privilege. Moreover, as the trial court ruled, the government would not have been able to cross-examine Mims effectively on the testimony he had already given, because any relevant questions would almost certainly call for information which might tend to incriminate him. *See, e.g., Reese v. United States,* 467 A.2d 152, 157 (D.C.1983) (blanket privilege justified because the government would be entitled to cross-examine as to bias and credibility, which would include questions about witness' role in homicide); *Letsinger v. United States,* 402 A.2d 411, 416 (D.C.1979). In this case, the "events about which [Mims] propose[d] to testify and the events about which the government legitimately would seek to cross-examine [him] were 'so intertwined' that waiver of the privilege as to the former necessarily would include the latter." *Bethea v. United States,* 599 A.2d 415, 417 (D.C.1991) (citing *Letsinger* ).

▆▆▆▆▆ We also reject Johnson's argument that, by testifying that he had exclusive control over the automobile for two or three hours prior to the arrest, Mims somehow waived his privilege against self-incrimination as to questions about his presence in the car at the time the marijuana was actually discovered or about his

knowledge of the presence of the marijuana or its origin. The focus of a waiver inquiry is on "whether [the witness] would have been exposed to a substantial *incremental* risk of incrimination" if he had been required to testify further. *Harris,* 614 A.2d at 1283 (emphasis in original). In this case, the limited admissions made by Mims before he invoked his Fifth Amendment privilege were insignificant compared with the substantial incremental risk of incrimination he would have incurred if he had been compelled to answer the questions posed by Johnson's counsel or exposed to the questions the government most likely would have asked on cross-examination. We hold, therefore, that the trial court did not err in granting Mims full immunity from testifying and striking his testimony from the record.[9]

## IV

Appellant's conviction is accordingly

*Affirmed.*

---

8. Since the government had already tried to arraign Mims twice for this offense, it was reasonable for the trial court to conclude that a commitment from the prosecution not to bring charges against him was unlikely. *See Wilson,* 558 A.2d at 1141.

9. We note also that Johnson's argument ignores the fact that he was convicted on a theory of joint and several constructive possession. Mims' testimony, even if not stricken, could not have affected the trial court's assessment of the evidence, which included the fact that Johnson was sitting in the driver's seat of the car just inches from four bags

of marijuana in plain view, as well as his admission that the drugs belonged to him. *See, e.g., Carter v. United States,* 614 A.2d 542, 544 (D.C.1992) (evidence of possession sufficient when defendant "was seated in the driver's seat of a car, and ... drug paraphernalia were found by the police in an aperture in the car door only inches away from where he sat"); *Parker v. United States,* 601 A.2d 45, 51–52 (D.C.1991) (convictions of both driver and passenger affirmed, on theory of constructive possession, when a brown paper bag containing heroin was found in plain view on the front seat of the car, "virtually equidistant between them").