Gary J. LEE–THOMAS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 06–CO–1096, 06–CO–1137
and 06–CO–1138.

District of Columbia Court of Appeals.

Argued March 20, 2007.

Decided April 19, 2007.

Lance A. Wade, with whom David M. Zinn and Benjamin A. O'Neil, Washington, DC, were on the brief, for appellant.

Florence Pan, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, and Roy W. McLeese III and Wendy L. Short, Assistant United States Attorneys, were on the brief, for appellee.

Before FARRELL and RUIZ, Associate Judges, and STEADMAN, Senior Judge.

STEADMAN, Senior Judge:

This case comes before us as an expedited interlocutory appeal from the trial court's denial of appellant's motion to dismiss indictments against him on the basis of double jeopardy so as to bar a retrial. Appellant does not dispute that he consented to the mistrial in the initial proceeding, but contends that his consent was obtained in violation of his Sixth Amendment right to effective and conflict-free counsel and was thus invalid. Because appellant has failed to meet the requirement of *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), to show that the alleged conflict adversely affected the advice of his counsel, we affirm the denial of the motion.

## I.

Appellant was indicted by a grand jury on multiple counts [1] arising out of a dispute between appellant and the victim, Keion Davis, over a drug transaction in which Davis sold appellant fake cocaine. At trial, appellant admitted that he shot

---

[1]. The major counts were assault with intent to kill while armed, D.C.Code §§ 22–401, –4502, and mayhem while armed, D.C.Code §§ 22–406, –4502. In separate indictments, appellant was also charged with one count of escape from an institution, D.C.Code § 22–2601(a)(1), and one count of violating the Bail Reform Act, D.C.Code § 23–1327(a).

Davis, which left him a quadriplegic, but asserted that he acted in self-defense. There were no witnesses to the shooting other than Davis and appellant, who both testified.

After the close of evidence but before closing argument, the trial judge called the attorneys into his chambers to discuss his concerns about the performance of defense counsel, who had been retained. Later that afternoon when the parties reconvened in court, the judge again voiced his concerns to place them on the record.[2] He stated that based on his observation of the jurors' faces, he believed that a conviction was coming on all counts, and he wanted to prevent a post-conviction claim of ineffective assistance of counsel. The judge suggested the solution of declaring a mistrial, but stated that he would allow appellant to consider his options and provide the parties with an opportunity to discuss the matter. The judge solicited thoughts from appellant's family, who stated that they were all satisfied with defense counsel's performance. The defense counsel defended his decisions. The government also noted its disagreement with the trial judge's assessment and stated that it would be prepared and willing to defend against any collateral attack that appellant might later assert. After some further discussion, the judge stated that the case would be continued until the following day to allow appellant to consult with his counsel and his family, and that "if you all want to go forward with this trial, I stand ready to do that and we move forward as if nothing else has been occurring...."

The next day, appellant's defense counsel informed the court that he had spoken with appellant and his family, and that "[b]ased on the discussion yesterday, [appellant] has indicated to me that his family is in the process of retaining new counsel and he would like the court to afford him an opportunity to get new counsel and declare this matter as a mistrial." The court then asked appellant to tell him personally about his decision to retain new counsel. Appellant stated:

> Well, Your Honor, I was thinking about the matters that you brought up the other day, about the cross-examination, and I did feel that was an issue. I also feel that, that there's more things that need to be brought out and maybe they can be brought out in the next trial.

The court inquired as to whether appellant had discussed the matter with his family, and appellant indicated that his family agreed with his decision. The court then declared a mistrial, explicitly indicating that it was doing so at the request of the defendant and "as such ... double jeopardy will not attach in this case."

Two months later, appellant moved to dismiss the indictments on double jeopardy grounds. Appellant takes a pretrial appeal from the denial of that motion.

## II.

We review *de novo* the denial of a motion to dismiss an indictment on double jeopardy grounds. *Young v. United States,* 745 A.2d 943, 945 (D.C.2000) (citing *Green v. United States,* 584 A.2d 599, 601 (D.C.1991)). Appellant acknowledges that when a mistrial is declared with the consent of the defendant or upon his motion, it is "ordinarily assumed to remove any barrier to reprosecution, even if the defen-

---

**2.** The trial court's concerns about counsel's performance focused on the absence of pretrial motions, the submission of only two hand-written voir dire questions, the limited cross-examination of Dr. Johnson (the treating physician of the complaining witness), the perceived insufficiency of direct examination of appellant and his step-father, and a handwritten "theory of the case" instruction.

dant's motion is necessitated by prosecutorial or judicial error." *Carter v. United States,* 497 A.2d 438, 441 n. 4 (D.C.1985) (citing *Anderson v. United States,* 481 A.2d 1299, 1300 (D.C.1984)); *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). However, appellant argues that when the trial court raised questions about his attorney's deficient performance,[3] it placed counsel in the conflicted position of having to evaluate his own performance in deciding whether to advise appellant to consent to a mistrial. Thus, he argues, his Sixth Amendment right to effective assistance of counsel was violated, his consent was invalid, and therefore a new trial is barred by double jeopardy.[4] The government responds by asserting, among other arguments, that, even assuming that his counsel gave impermissibly conflicted advice, the sole remedy for any claim of ineffective assistance of counsel is a new trial, not dismissal of the indictment on double jeopardy grounds. We need not reach that issue because we conclude that appellant has not made the required showing under *Cuyler* to establish a violation of the Sixth Amendment.

In *Cuyler,* the Supreme Court established the principle that "in order to establish a violation of the Sixth Amendment [based on an attorney's conflict of interest], a defendant who raised no objection at trial must demonstrate that *an actual conflict of interest adversely affected [the] lawyer's performance." Veney v. United States,* 738 A.2d 1185, 1192 (D.C. 1999) (quoting, with emphasis, *Cuyler,* 446 U.S. at 348, 100 S.Ct. 1708). In *Veney,* we took particular note of what we termed "the second prong of the *Cuyler* test; *viz.,* whether an alleged conflict actually affected the attorney's performance." 738 A.2d at 1196.[5] We observed that, for example, "a trial attorney's performance is not adversely affected where the best interest of the client 'could have dictated precisely the course suggested' by the trial attorney." 738 A.2d at 1197 (quoting from *Carey v. United States,* 50 F.3d 1097, 1100 (1st Cir.1995)). Here, we are quite unable to determine whether the alleged conflict of interest adversely affected defense counsel's performance in advising appellant with respect to a possible mistrial. In his double jeopardy motion to the trial court, appellant did not make any specific allega-

---

3. The government notes in its brief:

   As an initial matter the parties agree that the trial court erred in finding defense counsel ineffective while the trial was ongoing, instead of waiting until the trial's conclusion. As this Court held in *Johnson v. United States,* 746 A.2d 349, 354 (D.C. 2000), "once jeopardy attaches in a criminal trial, any subsequent allegation of ineffective assistance of counsel should usually be addressed in a post-trial motion or on appeal (or both), where the *Strickland [v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)] standard can be applied in its proper context."... Although *Johnson* notes that a mid-trial finding of ineffectiveness might be appropriate where "it is so obvious that defendant has been denied his right to the effective assistance of counsel as to make post-conviction relief on that ground all but inevitable," *id.* at 354

   n. 7, the parties agree ... that that standard was not met here.

4. Appellant premises his argument in part on the assumption that it was in defense counsel's best interest to convince appellant to request a mistrial in order to avoid further inquiry into his performance at trial. We are not convinced that the record supports this assumption.

5. In the later case of *Mickens v. Taylor,* 535 U.S. 162, 172 n. 5, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), the Supreme Court clarified that the *Cuyler* standard "is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect. An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance."

tions how defense counsel provided deficient advice or even set forth what in fact that advice was, nor did he request a hearing on this issue. His brief to us is also silent with respect to the actuality of defense counsel's performance with respect to the mistrial issue. *Cf. Cobb v. Standard Drug Co.*, 453 A.2d 110, 111 (D.C.1982) (stating that "it is appellant's duty to present this court with a record sufficient to show affirmatively that error occurred.").

■ Appellant asks us to hold that irrespective of the actual advice given, the conflict based on allegations of ineffectiveness placed the attorney in the position of having to assess his own performance, and thus *ipso facto* rendered the attorney incapable of providing conflict-free advice. Although it is true that allegations of ineffective assistance can create a conflict between an attorney and his client, *see, e.g., Douglas v. United States*, 488 A.2d 121, 136–37 (D.C.1985), we have rejected the argument that complaints about an attorney's performance, without more, render an attorney impermissibly conflicted as a matter of law. *See Malede v. United States*, 767 A.2d 267, 271 (D.C.2001) (declining to hold that "the bare filing of the disciplinary complaint create[s] a conflict of interest necessitating [counsel's] discharge from the case."). Although we recognize that counsel's advice concerning a possible mistrial would necessarily have required him to weigh the risk of a conviction against the chance of succeeding on a post-conviction claim that he had rendered ineffective assistance (including the advice he rendered on the mistrial point), to accept appellant's argument would effective-

ly eliminate the requirement under *Cuyler* of showing an adverse effect on the attorney's performance.

■ As a variant argument, appellant asserts that once his defense counsel had been shown to be constitutionally ineffective during the trial itself, counsel must be deemed ineffective for all purposes thereafter, and appellant was thus left in a position of effectively having no counsel at all. Assuming without deciding that the trial court made such a determination, we see no basis on the facts of this case for adopting a per se rule that an attorney's ineffectiveness at one stage of the case renders him deficient in all subsequent aspects of the representation. To prevail on a claim of ineffective assistance of counsel based on deficient performance, appellant must point to "specific errors of counsel" and the prejudicial effect that resulted. *United States v. Cronic*, 466 U.S. 648, 659 n. 26, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *Roe v. Flores–Ortega*, 528 U.S. 470, 482, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). The Supreme Court has stated that "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some *effect* of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." *Cronic*, 466 U.S. at 658, 104 S.Ct. 2039 (emphasis added). This is not a case of "complete denial of counsel" where the attorney's failure was so complete that it amounted to constructive absence of counsel.[6] *Id.* at 659,

---

**6.** We note appellant's reliance on *Vega v. United States*, 709 A.2d 1168 (D.C.1998) for the proposition that he had a Sixth Amendment right to effective assistance of counsel at the time he made his decision to request a mistrial. While in *Vega* we questioned the ability of unrepresented defendants to intelli-

gently evaluate their options when faced with the possibility of a mistrial, *id.* at 1172, that case presented the issue of whether the trial judge had properly found "manifest necessity" for a mistrial without regard to the defendant's consent-an issue very different from the one presented here. We have consistently

104 S.Ct. 2039; *Shields v. United States,* 916 A.2d 903 (D.C.2007) (describing such circumstances as "exceptional").

Finally, appellant contends that, in any event, the trial judge's statements "goaded" him into consenting to a mistrial. This claim lacks merit, however, because goading requires an intent "to *subvert* the protections afforded by the Double Jeopardy Clause." *Fletcher v. United States,* 569 A.2d 597, 598 (D.C.1990) (quoting *Oregon v. Kennedy,* 456 U.S. 667, 675–76, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) (emphasis added)). There is no evidence of such intent here. Indeed, it is undisputed that the trial judge was solely attempting to protect appellant's rights by voicing his concerns. *Cf. Wright v. United States,* 365 A.2d 365, 366 (D.C.1976) (retrial not barred by double jeopardy where trial judge declared mistrial solely for the benefit of appellant to protect his right to effective assistance of counsel).

Our dissenting colleague is of the opinion that appellant did not "retain primary control over the course to be followed," and that the judge's forceful comments about the likelihood of a conviction rendered his choice in the matter nothing more than a "hollow shell." However, these standards are drawn from cases addressing goading, which is wholly unsupported by the record in this case, as discussed *supra.* *Dinitz* and its progeny make clear that absent judicial or prosecutorial goading, a defendant's consent to a mistrial will act as a bar to double jeopardy claims.[7] 424 U.S. at 610–11, 96 S.Ct. 1075; *Speaks, supra* note 6, 617 A.2d at 954–55 (describing the circumstances where Double Jeopardy principles bar a retrial after a defendant has consented as "extraordinarily narrow" and limited to " 'those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.' " (quoting *Oregon v. Kennedy, supra,* 456 U.S. at 679, 102 S.Ct. 2083)); *Coreas v. United States,* 585 A.2d 1376, 1379 (D.C.1991) ("To avail himself of the *Kennedy* doctrine, [the defendant] must indisputably show that the defense was goaded by prosecutorial misconduct into requesting abandonment of the trial."). *See also Sundel v. Justices of Superior Court of Rhode Island,* 728 F.2d 40, 42 (1st Cir.1984) (Breyer, J.).

Moreover, we do not think the record here would support the expanded exception argued by the dissent. Notwithstanding the trial judge's initial strong criticisms of defense counsel's performance and view of the impending verdict, he retreated from his original stance[8] and made clear that the choice to continue rested with appellant. The trial judge unambiguously stated that "it's up to the defense whether they want to go forward," and his final statement on the subject before appellant made his decision was "if you all want to go forward with the trial, I stand ready to do that and we move forward as if nothing else has been occurring of the kind that we

---

stated that consent to a mistrial does not "depend[ ] on a knowing, voluntary, and intelligent waiver of a constitutional right." *Speaks v. United States,* 617 A.2d 942, 955 (D.C.1992) (quoting *United States v. Dinitz,* 424 U.S. 600, 609 n. 11, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976)).

7. Again, we do not reach the question of whether a defendant is entitled to counsel at

the time he reaches his decision to consent to a mistrial.

8. After hearing from defense counsel, the government, and a member of appellant's family, the trial judge stated: "Maybe you all's views of what I have seen is different from what I have seen and so I can tell you that I stand ready to be swayed in the other direction and I thank you."

have [been discussing]." In this case, appellant may have been faced with two options that were both imperfect, but he still retained the ability to choose between them. The trial judge clearly stood willing to follow whichever option appellant chose, and under these circumstances, we cannot say that the defendant did not retain "primary control of the course to be followed." *Dinitz*, 424 U.S. at 609, 96 S.Ct. 1075.

For the foregoing reasons, the order of the trial court rejecting appellant's double jeopardy claim is

*Affirmed.*

FARRELL, Associate Judge, concurring:

Although I agree with the court that appellant did not satisfy the *Cuyler* test for conflict of interest, I have strong doubts that that analysis even applies in this context of a defendant's motion for a mistrial. To see why, assume a case where the trial judge has allowed a defendant to go to trial representing himself without an adequate waiver-of-counsel inquiry under *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Mid-trial the judge realizes his mistake, and also genuinely believes that the unrepresented defendant is headed for conviction, so he gives the defendant the choice of continuing with trial, now "made aware [by the judge] of the dangers" of self-representation, *id.* at 835, 95 S.Ct. 2525, or a mistrial and possible appointment of counsel to begin again. (Assume even, with our dissenting colleague, that the judge tells the defendant his view "that

continuing to verdict will surely result in conviction." *Post* at 780.) It cannot be, I believe, that the defendant's choice to accept the mistrial is invalid, and must be disregarded for double jeopardy purposes, because it was made without advice of counsel—the equivalent of the putatively conflicted counsel in this case. It might well be invalid if the mistrial election had to be knowing, intelligent, and voluntary under *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), but we know that is not the case. *See United States v. Dinitz*, 424 U.S. 600, 609 n. 11, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). Thus, the defendant's request for a mistrial "will simply be taken at face value," *Sundel v. Justices of Superior Court of Rhode Island*, 728 F.2d 40, 44 (1st Cir.1984) (Breyer, J.), as *Dinitz* requires.[1] Otherwise the defendant, forced to go to verdict against his choice, would be "imprison[ed] ... in his privileges." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 280, 63 S.Ct. 236, 87 L.Ed. 268 (1942).

Were it necessary to decide the issue in this case, and unless persuaded differently, I would so hold.

RUIZ, Associate Judge, dissenting:

Although I agree with the court that appellant did not satisfy *Cuyler's* test by establishing an adverse effect from his counsel's conflict, I would hold that the Double Jeopardy Clause bars a retrial because the mistrial in this case cannot be said to have been appellant's choice.

"[T]he important consideration, for purposes of the Double Jeopardy Clause, is

---

1. In a different case, of course, where the prosecutor—or perhaps the judge—had deliberately "goaded" the defendant into requesting a mistrial to avoid a possible acquittal, the motion would be disregarded. *See Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). *Randall v. Rothwax*, 78

N.Y.2d 494, 577 N.Y.S.2d 211, 583 N.E.2d 924 (1991), bears little resemblance to this case, beginning with the fact that the judge there coerced a guilty plea mid-trial, a decision plainly governed by the *Johnson v. Zerbst* standard.

that the *defendant retain primary control* over the course to be followed. . . ." *United States v. Dinitz,* 424 U.S. 600, 609, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976) (emphasis added). This is essential because unless a defendant has chosen to waive his "valued right to have his trial completed by a particular tribunal," *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949), by requesting or agreeing to a mistrial, double jeopardy protection precludes reprosecution unless the trial court terminates a trial for manifest necessity.[1] *See United States v. Perez,* 22 U.S. (9 Wheat) 579, 579–80, 6 L.Ed. 165 (1824) (*cited in Vega v. United States,* 709 A.2d 1168, 1171 (D.C.1998)). The issue this case presents is whether appellant consented to a mistrial so as to waive the double jeopardy bar. In addressing that question, the Supreme Court has drawn a distinction between a situation where a defendant is presented with a "Hobson's choice" between continuing to verdict before a tainted jury and a retrial, *Oregon v. Kennedy,* 456 U.S. 667, 670, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982),—a choice that, no matter how unpalatable, remains to be made by the defendant—and, as in the goading cases, where the defendant's "choice" of mistrial was not a choice at all but a "hollow shell." *Id.* at 673, 102 S.Ct. 2083.

As appellant argues, to waive double jeopardy protection, a defendant's consent "must be genuine." *See Douglas v. United States,* 488 A.2d 121, 129 n. 3 (D.C.1985).

The operative inquiry is whether, in *Dinitz's* words, the defendant retained "primary control" over the mistrial option, and exercised a measure of "choice" as emphasized in *Kennedy.*[2] Both are vitiated where a defendant is told *by the judge* that continuing to verdict will surely result in conviction. In such a case, the judge effectively nullifies the defendant's "valued right" of continuing to verdict that is protected by the Double Jeopardy Clause, leaving him with a "hollow choice" of mistrial. *See Randall v. Rothwax,* 78 N.Y.2d 494, 577 N.Y.S.2d 211, 583 N.E.2d 924, 927 (1991) (holding reprosecution barred by the Double Jeopardy Clause where trial judge advised defendant that jury was leaning to convict, 10–2, because trial judge "eliminated the defendant['s] fundamental right to have [his] trial completed by the[ ] particular tribunal[ ]" by "completely depriv[ing] defendant of the option to take his chances with the particular jury").

The question in this case, therefore, is whether the trial judge's actions were such that it fairly can be said that Lee–Thomas was deprived of primary control over the mistrial decision that the Supreme Court has said is key to safeguarding a criminal defendant's right against double jeopardy. In my view, the record admits of no other conclusion. The trial judge told appellant in no uncertain terms that "a conviction [was] coming" and that the trial should come to an end.[3] This opinion, said the judge, was based on "sitting on . . . the

1. The parties agree there was no manifest necessity in this case.

2. This is not to be confused with requiring that a defendant must knowingly, intelligently and voluntarily waive the right to continue to verdict with the first jury in the context of a Sixth Amendment violation. See opinion for the court *ante* at n. 6; concurring opinion *ante* at 779. An uncounseled or ill-counseled lay decision might be unwise, but it can still be said to be the decision of the defendant

and it will be given effect, for Double Jeopardy purposes, "as long as the *defendant is offered the choice* of continuing." *Sundel v. Justices of Superior Court of R.I.,* 728 F.2d 40, 42 (1st Cir.1984) (emphasis added).

3. The judge said "judging from my reaction, from the jury's reaction from what I have observed, there is a conviction coming, and I believe he's going to be convicted on all counts and I want to stop that."

felony two calendar for seven years" and that he "can recognize when ineffective assistance is being perpetrated by an attorney in [his] presence." Specifically, the trial judge expressed concern that "an effective defense had not been presented."[4] There was a brief respite, after defense counsel and the government disagreed with the judge's assessment of counsel's performance—though not necessarily with the judge's predicted verdict—when the trial judge expressed a willingness to continue with the trial and gave the defendant an opportunity to consult overnight with his family and counsel (the same one whom the judge said was deficient) to consider the matter, and stated that he "st[ood] ready to be swayed in the other direction." But the judge at no time retracted his statement about defense counsel's deficient performance or waver in his prediction of the guilty verdict he was sure "was coming." Indeed, rather than indicate that he had been "swayed" he reiterated his strong views the next day.[5] Not surprisingly, when appellant told the judge that he wanted to retain a different lawyer at a new trial, he explained that he was doing so based on what the trial judge had said to him the previous day ("I was thinking

about the matters [the trial judge] brought up . . . .").

The record shows beyond peradventure that the trial judge acted in this case with the best of intentions, for the purpose of protecting appellant's rights. That benign motive does not, however, eliminate the impact on appellant of the judge's emphatic dire prediction of the trial's outcome for appellant. To the contrary, a trial judge is normally viewed by litigants as authoritative on matters of law and would seem even more so in the context of a trial over which the judge has been presiding.[6] As in *Randall*, the negative comments about counsel's performance and prediction of an impending guilty verdict came "bolstered by the full weight and authority of the court," 577 N.Y.S.2d 211, 583 N.E.2d at 926, and "so thoroughly permeated defendant's assessment of his chance for resolution from that jury that he was left bereft of his constitutionally protected option." *Id.* at 927. Even if one assumes that the 17–year–old defendant was counseled by his family and attorney during the recess, by conveying concern for the rights of a young man facing offenses that are "huge, violent offenses, where if a conviction is

4. The judge pointed to what he perceived were deficiencies in the cross-examination of the government's expert concerning the bullet's trajectory and in the direct examination of appellant's stepfather, which were intended to corroborate appellant's testimony that he acted in self-defense.

5. After appellant stated he wanted to retain another lawyer and said he thought there were issues that "can be brought out in the next trial," the judge said he "agree[d] with [appellant] ·that he needs another attorney," and suggested he might have declared a mistrial *sua sponte*, saying, "I don't do that [declare a mistrial due to ineffectiveness] lightly. I, for the record for whatever it's worth, in fact, in the 13 years that I have been on the bench I have only done it one other time when the court was sitting as the trier of fact

and so it's a question that the judge presiding over a trial, a trial of importance such as this one where the offenses are huge, violent offenses, where if a conviction is obtained Mr. Gary Lee Thomas faces a significant amount of prison time in each of those offenses, so the court has the concern and the court would have to make its decision *sua sponte*, meaning on its own. I don't have to wait for someone to tell me."

6. The trial judge observed that, "I have presided over the trial for the last week and a half to two weeks and I just need to put on the record my concern ... quite frankly, I have not been satisfied with the effectiveness of [defense counsel] in the case and I think that Gary Lee Thomas' rights have to be preserved."

obtained [appellant] faces a significant amount of prison time in each of those offenses," the judge's view is likely to have gained influence with the defendant and cannot but have overshadowed any countervailing advice.[7] This would be particularly so where the judge repeatedly questioned counsel's performance in defendant's presence, undermining, as defense counsel himself recognized,[8] the defendant's confidence in his attorney. The trial judge was unequivocal and forcefully expressed his view that appellant would suffer greatly from his counsel's ineffectiveness if the case were allowed to go to verdict. Therefore, on this record, I can only conclude that appellant did not have primary control of the decision and, as such, mistrial was not the result of a choice that should be freighted with waiving the protection of the Double Jeopardy Clause.[9] For this reason, I dissent.

7. The trial judge emphasized that he was acting based on "an obligation to the defense to ensure that a defendant who appears in this courtroom and decides to have his day in court and go to trial that he gets effective representation."

8. Defense counsel expressed his concern that "given the court's statement" that he had been ineffective in presenting a defense, he might no longer have his "client's confidence."

9. The case is thus properly viewed as one where the judge declares a mistrial *sua sponte*. As noted, the government agrees with appellant that there was no manifest necessity for a mistrial at the judge's instance in this case.