UNITED STATES of America,
Plaintiff-Appellee,

v.

John Chizoba ADI,
Defendant-Appellant.

No. 84–2259.

United States Court of Appeals,
Fifth Circuit.

April 19, 1985.

David H. Berg, Joel M. Androphy, Karrie Key, Houston, Tex., for defendant-appellant.

Daniel K. Hedges, U.S. Atty., James R. Gough, James L. Powers, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before RANDALL, JOHNSON, and GARWOOD, Circuit Judges.

JOHNSON, Circuit Judge:

John Chizoba Adi was charged in a federal grand jury indictment with conspiracy to deal in firearms without a license (Count One), making false statements in the acquisition of firearms (Counts Two and Three), dealing in firearms without a license (Count Four), and making false statements before a grand jury (Counts Five and Six), in violation of 18 U.S.C. §§ 2, 922(a)(1), (6), 924, 1623(a). A jury convicted Adi of one count of making false statements in the acquisition of firearms, the substantive offense of dealing in firearms without a license and one count of perjury, but acquit-

ted him of the remaining counts. The district court entered judgment accordingly and sentenced Adi to four years' imprisonment on each count, with the sentences to run concurrently. Adi appeals his convictions on the grounds that: (1) the district court erred in denying his motion for new trial based on newly discovered evidence; (2) the evidence was insufficient to sustain his conviction of dealing in firearms without a license; (3) the district court erred in denying his motion to quash Count Six of the indictment; and (4) the trial court's determination of sentence was tainted by the improper consideration of a certain sentencing recommendation. We vacate the conviction of Adi on Count Four for dealing in firearms without a license and in all other respects affirm the district court's judgment.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

John Adi, a Nigerian national, began working as an engineer at Lockheed in the Houston, Texas, area in 1979. In the middle of 1980, Adi approached a friend and fellow Lockheed employee, June Lloyd, and offered to pay him $500 if Lloyd would purchase some firearms for Adi.[1] Adi initially told Lloyd that he wanted the firearms for investment purposes and that he could not purchase the firearms himself because he did not have a Texas driver's license. Adi later made statements to

Lloyd to the effect that guns were hard to come by in Nigeria and that Adi had to get the guns to New York.[2] Lloyd agreed to make the purchases for Adi and, during 1980 and early 1981, Lloyd purchased twenty-seven .25 caliber pistols with money supplied by Adi. In each transaction, Lloyd completed a Firearms Transaction Record[3] in which he represented that he was the actual purchaser of the firearm. All of the firearms purchased by Lloyd were delivered by Lloyd to Adi.

Agents of the United States Treasury Department, Bureau of Alcohol, Tobacco and Firearms (ATF), became suspicious of Lloyd's large firearms purchases and questioned him concerning them.[4] Lloyd told the agents about his arrangement with Adi and informed them that Adi wanted him to purchase more guns. Lloyd agreed to cooperate with the ATF and to let the agents know when the other purchases were to be made. Thereafter, following up on tips from Lloyd, ATF agents conducted surveillance of Mason's Pawnshop, a licensed firearms dealer. On January 30, 1981, the agents observed Adi and Lloyd carrying a box of firearms from the pawnshop to Adi's car. The agents followed Adi to Lockheed, where he dropped off Lloyd, and then to Adi's residence, where Adi removed the box of firearms from his car and carried it into his apartment. On February 18, 1981, ATF agents again observed Adi and

1. Lloyd was never actually paid any money for purchasing the weapons for Adi. *See* Record Vol. VII at 60.

2. During the Government's case-in-chief, the following exchanges occurred between the prosecutor and witness Lloyd:

 Q. All right. Did [Adi] ever tell you how that it was difficult to get guns in Nigeria?
 A. Yeah, he indicated it was hard.

 * * * * * *

 Q. All right. During this period of time in early 1981 did Mr. Adi tell you something about always keeping his watch an hour ahead of time?
 A. Yes, sir. He always kept it, he said, ahead an hour. . . .
 Q. Did he tell you why?
 A. He said he did a lot of travel from the east coast.

 Q. Did he specifically mention to you at one point about getting the guns to New York?
 A. Yeah, he indicated that there was a person or something, a contact. He never specifically said that—you know, he never said that.
 Q. Didn't specifically mention the guns going to New York?
 A. He said that he had mentioned that he was going to be going. He said that they had to get them there.
 Record Vol. VII at 38, 39.

3. United States Treasury Department, Bureau of Alcohol, Tobacco and Firearms Form 4473.

4. In accordance with 27 C.F.R. § 178.126a (1984), Mason's Pawnshop, the licensed firearms dealer from which Lloyd made the firearms purchases, notified the ATF of its multiple sales of pistols to Lloyd.

Lloyd carrying a box of firearms from Mason's Pawnshop. On that occasion, the agents questioned Adi and confiscated the forty-two pistols that had just been purchased. Adi was not placed under arrest at that time, however. In both of these transactions, Adi actually paid the pawnshop owner in cash for the firearms, while Lloyd executed the Firearms Transaction Record. In *toto*, Adi purchased over eighty pistols through Lloyd.

During the summer or fall of 1981, Adi approached a former Lockheed co-worker, Ray Hall, and made an arrangement with Hall similar to his deal with Lloyd. Adi offered to pay Hall $10 for each pistol that Hall purchased on Adi's behalf. Hall, who was experiencing financial difficulties, agreed to the arrangement. Hall testified that during 1981 and 1982, he purchased some 200 .25 caliber pistols for Adi from several different establishments with cash supplied by Adi. Adi paid Hall approximately $2,800 for his efforts. Adi told Hall that "he [Adi] was sending the guns back to Nigeria." Record Vol. VII at 141. Adi also told Hall that pistols of that type (.25 caliber) were selling for four or five hundred dollars each in Nigeria.[5]

In April 1983, the federal grand jury in the Southern District of Texas began investigating the possible violation of 18 U.S.C. § 922 by Adi, Lloyd and Hall. The six-count indictment against Adi followed on July 22, 1983.

On July 26, 1983, ATF agents executing a search warrant conducted a search of Adi's residence. During the search, agents uncovered several airline ticket receipts showing Adi's roundtrip travel between the United States and Nigeria on four occasions during 1981 and 1982. No firearms were discovered. Adi's bank account records demonstrated that Adi made cash deposits of over $14,000 in 1981 and 1982. Adi's employment records showed that he earned between $22,000 and $23,000 during that same period.

At trial, the Government proceeded on the theory that Adi was the head of a major gun running operation that trafficked firearms from Houston to Nigeria. On the other hand, Adi's theory of defense was that Lloyd and Hall accused Adi of involvement in an illicit gun trade because of their dissatisfaction with the lack of return on their investments in Adi's company, Knackers International. Adi also sought to establish that Lloyd and Hall purchased the weapons for other Nigerians, Miki Onu and Michael Okolie, rather than himself.

Following his conviction on Counts Three, Four and Six, Adi moved for a new trial on the basis of newly discovered evidence. After a hearing, the district court denied the motion. This appeal followed.

## II. NEWLY DISCOVERED EVIDENCE

◼ Motions for new trial based on newly discovered evidence are generally disfavored by the courts and therefore are viewed very cautiously. *United States v. Vergara*, 714 F.2d 21, 22 (5th Cir.1983). Hence, the district court's denial of such a motion will be disturbed only where a clear abuse of discretion is demonstrated. *Id.* at 23. In this Circuit, a defendant who challenges the trial court's denial of the motion has the burden of showing that: (1) the evidence was discovered following trial, (2) the failure to learn of the evidence was due to no lack of due diligence on the part of the defendant, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material, *and* (5) the evidence is such that a new trial will probably produce an acquittal. *Id.; accord United States v. Fowler*, 735 F.2d 823, 830 (5th Cir.1984). *See United States v. Burns*, 668 F.2d 855, 859 (5th Cir.1982); *United States v. Metz*, 652 F.2d 478, 479 (5th Cir.1981).

---

**5.** Hall further testified that Adi indicated that someone would be driving down from Detroit, Michigan, to pick up the guns. Record Vol. VII at 145. Hall stated that when Adi began to tell him more about the Detroit transaction, "I ended the conversation.... I didn't want to know." *Id.*

In the instant case, the "newly discovered" evidence concerns June Lloyd's recanting of his trial testimony. In support of his motion for new trial, Adi submitted an affidavit in which Lloyd stated that his trial testimony was fabricated at the behest of ATF agents. The Government requested a hearing on the motion, which the court granted. On March 20, 1984, the date set for the hearing, defense counsel requested a continuance "in order to locate June Lloyd, who is a witness that we have been attempting to subpoena for this hearing...." Record Vol. V at 2. The district court granted the continuance and instructed both defense counsel and the Government to continue their efforts to locate Lloyd.

On April 9, 1984, the hearing on Adi's motion for new trial was held although Lloyd still had not been located. Another affiant, Vincent Okigbo, was present at the hearing and testified that he had witnessed a gun transaction between June Lloyd and another Nigerian, Michael Okolie. Okigbo, who was also under indictment for dealing in firearms without a license in an unrelated case, further stated that he had told Adi of Lloyd's dealings with Okolie before Adi's trial, but that Okigbo's attorney had advised Okigbo against giving a statement at that time.

The Government presented the testimony of two ATF agents and a United States Secret Service agent who had investigated Adi's case. The agents denied obtaining Lloyd's cooperation through threats or coercion. George Bose, a security officer at Lockheed who was present when ATF agents initially questioned Lloyd, testified that Lloyd voluntarily gave a statement to the agents detailing his association with Adi in the purchase of firearms.

At the close of all hearing testimony, the district court denied Adi's motion for new trial stating:

> I do not believe that Okigbo's testimony was newly discovered evidence. I believe that is a matter that has been touched on previously. I think the Government has come forth in good faith

to put on witnesses to demonstrate the efforts that they've made to locate the missing witness, June Lloyd. And accordingly, the Government's position will be upheld by the court. The motion for a new trial will be denied.

Record Vol. V at 71–72.

On appeal, Adi does not challenge the district court's holding that Okigbo's testimony did not constitute newly discovered evidence. Instead, Adi maintains that Lloyd's recanting affidavit constituted newly discovered evidence under *United States v. Metz*, 652 F.2d 478. Adi argues, "[the district court] did *not* deny the motion on the grounds that Mr. Lloyd's affidavit was not newly discovered evidence, because there is no question that, under *Metz*, the affidavit is newly discovered evidence." Brief of Appellant at 19. We do not agree.

In *Metz*, this Court recognized that the trial court may consider whether the exculpating testimony of a co-defendant is contrary to his own penal interest. 652 F.2d at 480. While Lloyd was not indicted as a co-defendant in the instant case, Adi draws the analogy that because Lloyd's statements in his recanting affidavit were against Lloyd's own penal interests, the affidavit was newly discovered evidence. *Metz* does not state so broad a rule of law. As we view *Metz*, consideration of whether the recanting statement is against one's penal interest is only one factor to be considered. 652 F.2d at 480.

Indeed, recanting affidavits and witnesses are viewed with extreme suspicion by the courts. *See United States v. Kearney*, 682 F.2d 214, 219 (D.C.Cir.1982); *United States v. Vincent*, 491 F.2d 1326, 1332 (2d Cir.), *cert. denied*, 419 U.S. 880, 95 S.Ct. 144, 42 L.Ed.2d 120 (1974); *Newman v. United States*, 238 F.2d 861, 862 n. 1 (5th Cir.1956). In *Newman*, this Court enunciated the test for considering a motion for new trial based on the contention that a recanting witness' affidavit is newly discovered evidence:

> If the District Judge, on the basis of the whole record of the original trial and the

matters presented on the hearing of the motion, believes the statements in the affidavit of recantation to be false and is not reasonably well satisfied that the testimony given by the witness on the trial was false, the decision is for him to reach for he is 'not at liberty to shift upon the shoulders of another jury his own responsibility, but [is] charged with the responsibility to seek the truth himself.' 238 F.2d at 863 (citation omitted); *see United States v. Kearney*, 682 F.2d at 220–21.

▬ In the case at bar, the district court judge had conducted the original trial and had observed the development of the case against Adi. Lloyd testified during the Government's case-in-chief and his testimony remained unshaken after cross-examination by defense counsel. During trial, the judge had the opportunity to observe Lloyd's demeanor and assess his credibility. Thus, at the hearing on the motion for new trial, the district judge was obviously faced with a credibility choice between Lloyd's affidavit, juxtaposed to his trial testimony, and the refuting testimony of the government agents and the Lockheed security officer. Upon the record before us, we conclude that the trial judge "was exceptionally qualified" to pass on the credibility of Lloyd's recanting affidavit. *See United States v. Johnson*, 327 U.S. 106, 112, 66 S.Ct. 464, 466, 90 L.Ed. 562 (1946). The district court, therefore, did not abuse its discretion in denying Adi's motion for new trial.[6]

## III. SUFFICIENCY OF THE EVIDENCE ON COUNT FOUR

Adi challenges his conviction on Count Four on grounds that the evidence was insufficient to prove that he was engaged in the business of dealing in firearms without a license. 18 U.S.C. § 922(a)(1).[7] Specifically, Adi argues that the Government proved only that he had no license to deal in firearms but adduced no evidence showing that Adi actually sold any firearms, or that he offered any firearms for sale. On the other hand, the Government contends that while no direct evidence of firearms sales was presented, there was ample circumstantial evidence from which the jury could infer that Adi held guns available for sale. *See United States v. Berry*, 644 F.2d 1034, 1037 (5th Cir.1981); *United States v. Wilmoth*, 636 F.2d 123, 125 (5th Cir.1981); *United States v. Shirling*, 572 F.2d 532, 534 (5th Cir.1978).

▬ Adi received a sentence on Count Four which is to run concurrently with those imposed on Counts Three and Six. Adi does not challenge the sufficiency of the evidence supporting his convictions on those counts. Thus, in the interest of judicial economy, we invoke the concurrent sentence doctrine to decline review of Adi's conviction of dealing in firearms without a license. *United States v. Montemayor*, 703 F.2d 109 (5th Cir.), *cert. denied*, ── U.S. ──, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). Under this doctrine, the existence of one valid conviction may make unnecessary the review of other convictions when, as here, concurrent sentences have been given. *United States v. Rubin*, 591 F.2d 278, 280 (5th Cir.), *cert. denied*, 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979). To assure that Adi suffers no adverse consequences from our declining to review

---

**6.** We find no merit in Adi's contention that the district court's denial of his motion in this case improperly caused his ability to obtain a new trial to hinge on whether he could locate the recanting affiant for the hearing on the motion. While generally a motion for new trial may be decided upon affidavits without a hearing, *Metz*, 652 F.2d at 481, since a hearing was held in the instant case, it was not unreasonable for the district court to credit the testimony of the Government's witnesses, who appeared and testified, over that of Lloyd's uncorroborated affidavit.

**7.** § 922. Unlawful acts

(a) It shall be unlawful—

(1) for any person, except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms or ammunition, or in the course of such business to ship, transport, or receive any firearm or ammunition in interstate or foreign commerce. . . .

Count Four, we vacate the conviction on that count. Vacating the unreviewed conviction in no way alters the jury's verdict or the conviction itself. Instead, "the effect of this judicial action is to suspend imposition of the sentence.... No need of the Government is impaired; at the same time, no possibility of adverse collateral consequences to [the defendant] exists." *Montemayor*, 703 F.2d at 116. *See United States v. Cardona*, 650 F.2d 54, 57–58 (5th Cir.1981).

## IV. DISTRICT COURT'S REFUSAL TO QUASH COUNT SIX

Adi filed a pretrial motion to suppress his grand jury testimony or in the alternative to quash Counts Five and Six of the indictment, which the district court denied. On appeal, Adi asserts that the district court should have dismissed Count Six of the indictment against him pursuant to Rule 7 of the Federal Rules of Criminal Procedure. This argument is meritless. Rule 7 provides no support for Adi's contention. The rule sets forth the requisites of an indictment or information, but sets no standards for the granting of a motion to quash.

 Adi next maintains that his grand jury testimony was literally true and thus did not constitute a violation of 18 U.S.C. § 1623(a). On April 25, 1983, Adi was subpoenaed to testify before a federal grand jury regarding the grand jury's investigation of whether Adi had caused Lloyd to make false statements in the acquisition of firearms in order to conceal the fact that Adi was the actual purchaser of the firearms. The indictment charged that in sworn testimony, Adi knowingly made a material false declaration when the following exchange occurred during the Government's examination of Adi before the grand jury:

Q. But were you with this June fellow when he was buying the guns?

A. (Nods head) No.

Q. So you didn't participate in any of the conversation anyway?

A. What I am saying is I don't even know he was buying anything...

Record Vol. I at 219. Adi characterizes his answer as being merely unresponsive, rather than untruthful. In reliance upon *Bronston v. United States*, 409 U.S. 352, 361, 93 S.Ct. 595, 601, 34 L.Ed.2d 568 (1973), Adi asserts that it was the responsibility of the United States Attorney to press for a specific answer and that perjury statutes should not be invoked in a situation such as the instant case. Adi also contends that the United States Attorney's question was devoid of any facts concerning the precise time, date and place to which the inquiry was directed. This argument is specious. Our examination of the record indicates that the time frame surrounding the Government's inquiry involved the incident during which ATF agents confiscated a box of firearms from Adi and Lloyd as they exited Mason's Pawnshop. It is also readily apparent from the record that Adi knew the time frame surrounding the Government's inquiry. As this Court has stated:

> The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry [citing *Bronston*]. This does not mean, however, that question and answer must be aligned in categorical and digital order. If the answer to an arguably ambiguous question is sufficiently explicit to satisfy the jury beyond reasonable doubt that the defendant knowingly made a false statement, then the statement may serve as the predicate for the offense of making a false declaration.

*United States v. Thompson*, 637 F.2d 267, 270 (5th Cir.1981).

 In sum, Adi has made no showing that the district court abused its discretion in denying his motion to quash Count Six of the indictment.

## V. SENTENCE SEVERITY

The Government submitted a sentencing memorandum to the district court which included a letter from the Nigerian government. The letter regarded another Nigerian defendant who had been convicted of

dealing in firearms without a license. The Nigerian Consul General detailed the crime problems created in Nigeria by the influx of weapons from other countries and urged the court to "mete out the severest penalty" and to order deportation after the sentence was served. Adi contends that the inclusion of this letter in the sentencing memorandum, and the court's consideration of it, denied him due process of law under *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Adi's reliance upon *Williams,* however, appears to be misplaced. In that case, the Supreme Court held that the due process clause should not be treated "as a uniform command that courts throughout the Nation abandon their age-old practice of seeking information from out-of-court sources to guide their judgment toward a more enlightened and just sentence." 337 U.S. at 250–51, 69 S.Ct. at 1085.

 Generally, this Court will not review the severity of a sentence imposed within statutory limits, *United States v. Sparrow,* 673 F.2d 862, 864 (5th Cir.1982), and the trial court's broad discretion in determining the appropriateness of a sentence will not be disturbed absent a finding of arbitrary or capricious action resulting in a gross abuse of discretion. *United States v. Small,* 636 F.2d 126, 127 (5th Cir.1981).

Adi acknowledges that "[i]t is fundamental that a judge has a wide discretion in the kind of information he considers in determining punishment," *citing United States v. Ochoa,* 659 F.2d 547, 548 (5th Cir.1981), *cert. denied,* 455 U.S. 959, 102 S.Ct. 1472, 71 L.Ed.2d 678 (1982). Brief of Appellant at 14. Adi insists, however, that this Court will not allow the trial court to consider, even if true, the characteristics of offenders in a specific group, *citing United States v. Cavazos,* 530 F.2d 4 (5th Cir. 1976). In *Cavazos,* the defendant pleaded guilty to narcotics violations and at the time of sentencing informed the court that he had no prior criminal record. The trial judge responded that most drug offenders who appeared before the court had no prior arrest record. The court, drawing from nonrecord FBI computer statistics, went on to state that some drug offenders got by with ten, fifteen, twenty, or as many as 200 narcotics sales before they were ever arrested. The trial court then imposed the maximum term of imprisonment. This Court held that the use of statistics was an invalid premise on which to impose sentence. 530 F.2d at 6. The panel further stated: "This approach injects hypothetical extraneous considerations into the sentencing process and contradicts the judicially approved policy of individualizing sentences that are tailored to fit the offender." *Id.* Upon its facts, *Cavazos* is readily distinguishable from the instant case.

 Clearly, as the Government maintains, the sentencing court may take into consideration the impact that a pattern of crime might have in foreign countries. *See United States v. Tooker,* 747 F.2d 975, 979 (5th Cir.1984). Further, the court apparently was not overly influenced by the Nigerian government's recommendation. The court sentenced Adi to three *concurrent* four-year terms of imprisonment. The maximum statutory penalty was five years' imprisonment on each count in addition to fines totalling $20,000. Adi has not demonstrated that the district court abused its discretion in imposing the somewhat abbreviated and concurrent sentence here.

For the foregoing reasons, the judgment of the district court is

AFFIRMED IN PART; VACATED IN PART.