**ARNOLD MALONE, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2008-042

Supreme Court of the Virgin Islands

January 26, 2010

■

THOMAS ALKON, ESQ., Law Offices of Thomas Alkon, Esq., St. Croix, USVI, *Attorney for Appellant*.

TERRYLN M. SMOCK, ESQ., Assistant Attorney General, V.I. Department of Justice, St. Thomas, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(January 26, 2010)

SWAN, J. On April 9, 2007, Arnold Malone ("Malone") approached Akumba Daniel ("Akumba Daniel" or "Akumba"), in the Hospital Ground area of St. Thomas during daytime hours. Malone proceeded to shoot Akumba two times in the presence of Akumba's cousin, Devon Davis, ("Devon Davis" or "Devon"), as Akumba and Devon were cutting tint material to install on Akumba's vehicle. On the day of the shooting, Akumba and his brother, Akeem Daniel, ("Akeem Daniel" or "Akeem") identified Malone as Akumba's assailant in their written statements to the Virgin Islands Police. (Appellee's App. 4, 7-8.)

From the record before us, there have been two subsequent recantations by Akumba of his initial identification of Malone as his assailant; however, there may also have been a third recantation by Akumba. First, on May 22, 2007, Akumba wrote a letter to Virgin Islands Attorney General Vincent Frazer ("Attorney General"), recanting his identification of Malone as his assailant. (*Id.* at 22.) In his letter Akumba asked that the charges against Malone be dismissed and stated that "an individual in the area mistakenly pointed and identified one Arnold Malone to the V.I. Police as the person who had fired and shot me." (*Id.*) On August 16, 2007, Akumba wrote a follow-up letter to the Attorney General, stating that he would not participate in the proceedings against

411

Malone and requesting, in light of his earlier recantation, an explanation as to why the charges against Malone had not been dropped. (*Id.* at 23.)

Second, on March 18, 2008, and prior to the start of the first day of Malone's trial, Akumba recanted his earlier recantation of the written statement he had given to the police in which he had identified Malone as his assailant. Akumba explained that his first recantation on May 22, 2007, was the product of fear for his personal safety. Importantly, during the trial, Akumba testified that Malone was the person who shot him on April 9th, 2007.

Third, on March 20, 2008, which is subsequent to the second day of Malone's trial, but prior to the third and final day of trial, Akumba, Akeem and their mother, Jacqueline Payne ("Payne"), appeared at the law office of Malone's counsel. Akumba, Akeem and Payne spoke to another attorney in the law office because Malone's counsel was unavailable, which unavailability had also prompted a recess of several days during the trial. During this conference, Akumba and Akeem allegedly recanted their trial testimonies, claiming that they had testified untruthfully during the trial because of threats made to them by the People's counsel.

The trial resumed on March 24, 2008, for closing arguments, final instructions to the jury and jury deliberations. At the end of the trial, the jury convicted Malone of all eight counts in the Second Amended Information.[1]

---

[1] The Second Amended Information charges Malone with: Count I, Attempted First Degree Murder with respect to Akumba Daniel in violation of title 14, sections 921, 922(a)(1) and 331 of the Virgin Islands Code; Count II, Unauthorized Use of a Firearm During the Attempted Commission of a Murder with respect to Akumba Daniel in violation of title 14, section 2253(a) of the Virgin Islands Code; Count III, Assault in the First Degree with the intent to commit murder with respect to Akumba Daniel, in violation of title 14, section 295(1) of the Virgin Islands Code; Count IV, carrying or using a dangerous weapon during the commission or attempted commission of a Crime of First Degree Assault with respect to Akumba Daniel, in violation of title 14, section 2253(a) of the Virgin Islands Code; Count V, Assault in the Third Degree with a Deadly Weapon with respect to Akumba Daniel, in violation of title 14, section 297(2) of the Virgin Islands Code; Count VI, Carrying or using a Dangerous Weapon During the Commission of Attempted Commission of a Crime of Assault in the Third Degree with respect to Akumba Daniel, in violation of title 14, section 2253(a) of the Virgin Islands Code; Count VII, Assault in the Third Degree with a Deadly Weapon with respect to Akeem Daniel, in violation of title 14, section 297(2) of the Virgin Islands Code and Count VIII, Carrying or Using a Dangerous Weapon During the Commission or Attempted Commission of a Crime of Assault in the Third Degree with respect to Akeem Daniel, in violation of title 14, section 2253 of the Virgin Islands Code.

Malone asserts that the trial court violated his Constitutional right to compulsory process afforded him by the Sixth Amendment to the Constitution of the United States, when the trial court, upon defense counsel's request, declined to issue subpoenas for Akeem and Akumba for them to return to court to explain their alleged "law office recantations." For the reasons explicated below, we will affirm Malone's convictions and will affirm the trial court's decision, denying Malone's Motion to Reopen the Defense Case.

## I. FACTS AND PROCEDURAL HISTORY

During the afternoon of April 9th, 2007, Akumba was working on his vehicle with his cousin, Devon Davis, "cutting tint" to install on the windows of Akumba's vehicle. Malone approached both men and unhesitatingly shot Akumba twice at the Hill Side Condominiums Complex in the Hospital Ground area of St. Thomas.

As Malone was hurriedly departing the crime scene, Akeem, the victim's brother, gave chase after Malone. During the chase, Akeem shouted vituperating words at Malone. After a short distance in the chase, Malone fired four gunshots at Akeem, prompting Akeem to seek refuge from the gunshots.

Akeem knew Malone by the name "Ajah." Both brothers knew Malone before the shooting because of Malone's past romantic involvement with their mother. Akumba and Akeem (collectively "the brothers" or "the Daniel Brothers") had also observed Malone on innumerable occasions when Malone frequented their neighborhood. Additionally, they both knew Malone from a harrowing incident which occurred during the time of their mother's relationship with Malone. During the incident, Malone brandished a gun and aimed it at Payne in Akeem's presence. Akeem immediately intervened in the incident on his mother's behalf. Therefore, Malone pointed his gun at Akeem.

Also, prior to the shooting incident and according to Akumba's statement to police, Malone had initiated a berating telephonic conversation with Akumba, concerning disparaging remarks Akumba allegedly uttered to third parties about Malone's niece. Similarly, Payne informed Detective Margaret Price ("Detective Price") of the Virgin Islands Police Department that in another telephonic conversation prior to the shooting, Malone had called her home to threaten Akumba because of unflattering remarks Akumba purportedly made about Malone's niece.

413

On the day of the shooting, Akumba gave a written statement to Detective Price identifying Malone as his assailant. After Malone's arrest, Akumba sent two letters, one of them notarized, to the Attorney General, recanting his initial identification of Malone as his assailant. (Appellant's App. 52; Appellee's App. 22, 23.) However, in an unrelated incident, Akumba was arrested and charged with discharging a firearm in a public place and unauthorized use of a firearm in the attempted commission of a crime of violence. Pursuant to Akumba's plea agreement with the People of the Virgin Islands ("the People") in his firearm case, Akumba agreed to testify truthfully in Malone's trial, as a witness for the People.

On the morning of the first day of Malone's trial, Akumba signed a written statement, asserting that he had previously recanted his identification of Malone because he feared for his personal safety and the safety of his family members. (Trial Tr., Vol. I, 80, 84-85, Mar. 18, 2008.) During the trial, Akumba was examined and cross-examined about these recantations. Akeem also testified as a People's witness at Malone's trial. However, Akeem was not cross-examined by Malone's counsel. After both parties rested their respective cases, and because of the sudden illness of Malone's counsel, the trial was continued from March 20, 2008, and reconvened on March 24, 2008. During this hiatus in the trial, Akumba and Akeem informed Attorney John Benham ("Attorney Benham"), a partner in the law firm with which Malone's trial counsel is associated, that they had testified falsely during the trial. When the trial resumed on March 24th, 2008, Malone's counsel filed a Motion to Reopen the Defense Case in order that the defense could examine Akeem and Akumba about their "law office recantations." The Motion to Reopen the Defense Case was supported by an affidavit of Attorney Benham. Of the fifteen paragraphs in Attorney Benham's affidavit, only four are pertinent to the issues in this case, namely paragraphs eleven, twelve, fourteen and fifteen; to wit:

> 11. Akumba Daniel and Akeem Daniel stated that the reason for the visit was to inform attorney Caffee that they had testified falsely during the course of the *Malone* trial. They further stated that the reason they had testified falsely was because they had been threatened by counsel for the Government with perjury charges if they did not testify in favor of the prosecution's case. In particular, Akumba Daniel stated that the Defendant Malone did not shoot him as is charged in the information.

When I questioned him on that point, Akumba said that he does not know who shot him, and that his identification of Defendant Malone in his testimony was the result of the threats made by counsel for the Government.

12. The meeting lasted for about 25 minutes, at which point Akeem Daniel stated that he had to get to his job, and that he was providing transportation for Akumba and his mother. They were to return to our office on the morning of Friday, March 21, 2008 to elaborate on their statements, but never appeared.

. . . .

14. Subsequently, I realized that both Akumba Daniel and Akeem Daniel were each represented by counsel appointed by this Court. Attorney Benjamin Currence was appointed to represent Akumba Daniel when he had been arrested on a material witness warrant. The Territorial Public Defender Office, by [A]ttorney Julie Smith-Todman had been appointed to represent Akeem Daniel when he was arrested on a material witness warrant. Subsequently, the Territorial Public Defender Office, by [A]ttorney Ariel Smith, was appointed to represent Akumba Daniel on a firearms possession charge.

15. On the morning of Friday, March 21, 2008, [A]ttorney Caffee and I were able to contact all of the [A]ttorneys identified in paragraph 14 above, and described to them the events contained in this affidavit. Attorneys Ariel Smith and Julie Smith-Todman each stated that they will not consent to any further communications with their respective clients unless they are present and then provide consent.

(Appellant's App. 44-45.) The trial court promptly denied Malone's Motion to Reopen the Defense Case.

The import of the Motion to Reopen the Defense Case was Akumba's and Akeem's March 20, 2008 disclosures to Attorney Benham, but without the knowledge of their counsel, that they wished to recant their

415

trial testimonies.[2] The trial court afforded Malone's counsel until 10:00 a.m. on March 24, 2008, to secure Akumba's and Akeem's appearances before the trial court to be examined on their "law office recantations." However, Malone's counsel failed to secure both brothers' appearances before the trial court, causing the trial court to deny Malone's Motion to Reopen the Defense Case. The trial court concluded that any additional evidence of the brothers' recantations would be cumulative, and being cumulative, their purported "law office recantations" would not alter the outcome of the trial. Additionally, the trial court denied Malone's request for court subpoenas for Akumba and Akeem, and denied Malone's request for the Superior Court Marshals' assistance in securing the court appearances of Akumba and Akeem to address their "law office recantations." (Appellant's App. 54.)

Having been found guilty of all eight counts in the Second Amended Information, the trial court imposed sentence upon Malone in its May 19, 2008, Judgment and Commitment Order.[3] This timely appeal ensued.

## II. JURISDICTION

This Court has jurisdiction pursuant to title 4, section 32(a) of the Virgin Islands Code. Title 4, section 32(a) provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgment, final decrees or final orders of the Superior Court or as otherwise provided by law." V.I. CODE ANN. tit. 4, § 32(a). The trial court's Judgment and Commitment is a final order of the Superior Court. Accordingly, we have jurisdiction over this matter.

---

[2] Akumba Daniel, Akeem Daniel and Jacqueline Payne went to the offices of Watts, Benham and Sprehn, P.C., a local law firm, to speak with Malone's counsel, although they were represented by counsel appointed by the trial court. Lorren D. Caffee, Esq., Appellant's counsel at the time, was out of the office. Therefore, John H. Benham, Esq., ("Attorney Benham") addressed their concerns. The Daniel Brothers told Attorney Benham that they did not testify truthfully during Malone's trial. Specifically Akumba told Attorney Benham that he did not know who shot him. (Appellant's App. 53.) Thereafter, Attorney Benham prepared an affidavit, which is the basis of Malone's recantation arguments on appeal.

[3] During sentencing, Malone having been adjudicated guilty of all eight counts in the Second Amended Information, he was committed to the custody of the Bureau of Corrections for fifteen years incarceration on each of Counts I, II, III, IV, VI and VIII. In addition, Malone was fined $25,000.00 on each of Counts II, IV, VI and VIII. Similarly, he was committed to the custody of the Bureau of Corrections for five years and fined five hundred dollars on both Counts V and VII. The terms of incarceration were ordered to run concurrently as were the fines imposed upon Malone. (Appellant's App. 5-7.)

## III. STANDARD OF REVIEW

The issues involve our interpretation of the Compulsory Process Clause of the Sixth Amendment to the Constitution of the United States. Therefore, our review is *de novo. Ambrose v. People*, 50 V.I. 325, 334 (V.I. 2008) (quoting *United States v. Toliver*, 330 F.3d 607, 610 (3d Cir. 2003)).[4] Tangentially, the issues also involve enforcement of subpoenas pursuant to Rule 17 of the Federal Rules of Criminal Procedure.[5]

■ We review a trial court's decision concerning whether to reopen a case on the basis of a recanting witness by using the abuse of discretion standard. *See, e.g., U.S. v. Bujese*, 371 F.2d 120, 125 (3d Cir. 1967); *see also, United States v. Bolt*, 776 F.2d 1463, 1471 (10th Cir. 1985). However, as a general rule, an appellate court will not consider a constitutional argument raised for the first time on appeal, unless the error is plain. *United States v. Olano*, 507 U.S. 725, 731-32, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). Under the plain error standard, we review for errors that are plain and that affect the substantial rights of the Appellant. *Id.* An error is a deviation from a legal rule, and an error is plain if it is clear and obvious. *See id.* A plain error also must affect substantial rights. *Id.* We agree with the United States Court of Appeals for the Third Circuit ("Third Circuit") that:

> Generally, an error affects substantial rights when it is prejudicial, i.e., it affected the outcome of the [trial] court proceedings. Moreover, even

---

[4] The United States Constitution applies to the United States Virgin Islands through Section 3 of the Revised Organic Act of the Virgin Islands. *See* Revised Organic Act of 1954, § 3, 48 U.S.C. § 1614, reprinted in V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 86-88 (1995) (preceding 1 V.I.C.). The Bill of Rights of the Constitution of the United States, contained in the Organic Act and statutorily conferred by Congress, "expresses the congressional intention to make the [F]ederal Constitution applicable to the Virgin Islands to the fullest extent possible consistent with its status as a territory." *In re Brown*, 439 F.2d 47, 50-51, 8 V.I. 313 (3d Cir. 1971). The right to a trial by jury is provided under section 26 of the Revised Organic Act of 1954. The Federal Rules of Criminal Procedure are applicable to criminal trials in the Superior Court of the Virgin Islands through Rule 7 of the Rules of the Superior Court of the Virgin Islands, which states: "[t]he practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by . . . the Federal Rules of Criminal Procedure[.]"

[5] Malone, however, represented in his brief on appeal that Akumba and Akeem were still under subpoena when his Motion to Reopen the Defense Case was made. (*See* Appellant's Br. 4) ("mechanism for obtaining such compulsory process is Rule 17 of the Federal Rules of Criminal Procedure.").

if such an error is found, the court of appeals has the authority to order correction, but is not required to do so. We should exercise our discretion to correct the error only if it seriously affects the fairness, integrity or public reputation of judicial proceedings.

*United States v. Dragon*, 471 F.3d 501, 505 (3d Cir. 2006).

## IV. ISSUES

■ The issues[6] are (1) whether after the Daniel Brothers had previously testified during the trial, the trial court violated Malone's Constitutional right of compulsory process under the Sixth Amendment of the United States Constitution when the trial court denied Malone's request for subpoenas to compel the presence of the Daniel Brothers in court, in order for them to be re-examined on their "law office recantations;" and (2) whether the trial court violated Malone's Constitutional right when it denied defense counsel's request for assistance from the Superior Court Marshals to serve subpoenas upon the Daniel Brothers in order to obtain testimony on their "law office recantations" that purportedly would be in Malone's favor.[7] The other issues raised by Appellant depend on the resolution of the compulsory process issue.[8]

---

[6] In his Notice of Appeal, Malone wrote that he appeals from the following: (1) the trial court's October 9, 2007 Memorandum Opinion and Order denying defendant's pretrial Motion to Dismiss. However, the October 9, 2007 Memorandum Opinion was not made a part of Malone's appendix. The same Memorandum Opinion of October 9, 2007 which addresses the recantation issue was made a part of Appellee's appendix; (2) the trial court's May 14, 2008 Memorandum Opinion and Order denying defendant's Motion for Judgment of Acquittal with respect to Counts seven and eight of the Second Amended Information, and denying defendant's request for a new trial, and; (3) the trial court's May 7, 2008 oral Judgment and Commitment issued from the bench. Nevertheless, on appeal, Malone's brief appears to have limited this appeal to the issue of compulsory process.

[7] The Daniel Brothers testified at trial and were subject to cross-examination by Appellant. Appellant was afforded and exercised his opportunity to cross-examine Akumba Daniel. Appellant, however, informed the trial court that Appellant had "no cross-examination," regarding Akeem Daniel. (Trial Tr., Vol. I, 100, March 18, 2008.) The witness was excused, subject to being called by Appellant at a later time. (*Id.* at 101.) Appellant did not recall Akeem Daniel.

[8] According to Appellant's brief, the following issues are under review on appeal:
 1. Did the trial court abuse its discretion in refusing to issue compulsory process at Defendant/Appellant's request.

## V. DISCUSSION

Before commencing our discussion, it is noteworthy and disconcerting that Malone failed to provide this Court with a complete trial transcript or alternatively, to provide this Court with all salient portions of the trial transcript involving the issues on appeal.

Malone has grounded his entire appeal on the trial court's alleged violation of his Sixth Amendment right to compulsory process. Malone's request for subpoenas and request for assistance from the Superior Court Marshals to secure the appearances of the Daniel Brothers implicitly raised the issue of compulsory process before the trial court. Consequently, we review for plain error, the trial court's denial of Malone's Motion or Request to issue subpoenas for the Daniel Brothers. Malone will prevail on his Motion only if we find that when the trial court denied Malone's Motions to Reopen the Defense's Case for the Daniel Brothers to be further examined on their "law office recantations," that the trial court committed an error, that the error was plain, and that the plain error affected Malone's substantial rights. *Olano*, 507 U.S. at 732. We first define "compulsory process," and thereafter discuss its elements as applicable to Malone's case. Following the discussion, we conclude that

---

2. Did the trial court abuse its discretion in placing unreasonable conditions on its granting [of] a motion to reopen the taking of evidence.

3. Did the court's trial errors deprive Appellant of a fair trial and deprive him of his due process rights.

(Appellant's Br. iv.) However, the issue of compulsory process and denial of Malone's Motion to Reopen the case for the taking of evidence is interwoven with the Daniel Brothers' alleged "law office recantation." Furthermore, the "law office recantation" is precisely why defense counsel requested that the trial court issue subpoenas for the Daniel Brothers, thereby creating the issue of compulsory process.

Malone's third issue, "[d]id the court's errors deprive Appellant of a fair trial and deprive him of his due process rights" (Appellant's Br. iv.) is surplusage, because the standards for evaluating due process under the Fourteenth Amendment are the same as evaluating compulsory process under the Sixth Amendment. Some courts, when faced with similar circumstances, have analyzed the issue presented under the Due Process Clause rather than the Compulsory Process Clause. There is little, if any, difference in the analysis or protection offered by either right. *V.I. v. Mills*, 956 F.2d 443, 446 n.4, 27 V.I. 353 (3d Cir. 1992). The Second issue is a subset of the first. Because we will find that Malone has no right to compulsory process, it will not be necessary for us to decide whether the trial court established unreasonable conditions to obtain compulsory process. Malone's appeal does not raise consideration of the Daniel Brothers' recantation as newly discovered evidence warranting a new trial.

the trial court did not violate Malone's Constitutional right to compulsory process.

## A. Compulsory Process

Malone asserts that he was deprived of his right to compulsory process when the trial court declined to issue process for the Daniel Brothers to be examined on their "law office recantations." Malone further asserts that had the subpoenas been issued, he would have procured for the jurors' consideration the recanted statements of both Akumba and Akeem made at the law office of his counsel. Importantly, at the time of the purported "law office recantations" by Akumba and Akeem, the jury had already heard the examination and cross-examination of Akumba's testimony, and had heard the direct examination of Akeem's testimony concerning the same shooting incident. Likewise, the jury had already heard Akumba's testimony, concerning his first recantation on the shooting incident. (*See* Trial Tr., Vol. I, 31-86) (complete trial testimony of Akumba Daniel). Accordingly, we find no error in the trial court's refusal to issue subpoenas for the Daniel Brothers to be examined regarding their "law office recantations."

 The Sixth Amendment guarantees a defendant the right "to have compulsory process for obtaining witnesses in his favor . . . ." U.S. CONST. amend. VI. However, the right to present relevant evidence is "subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998). The *Scheffer* Court opined that:

> A defendant's interest in presenting such evidence may thus bow to accommodate other legitimate interests in the criminal trial process. As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve. Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused.

*Id.* (citations and internal quotation marks omitted); *see also, United States v. Hoffecker*, 530 F.3d 137, 184 (3d Cir. 2008). Clearly, a criminal

defendant does not have a Constitutional right to have cumulative evidence admitted.

■ To demonstrate that he was convicted in violation of his Sixth Amendment right to compulsory process, Malone must show:

> First, that he was deprived of the opportunity to present evidence in his favor; second, that the excluded testimony would have been material and favorable to his defense; and third, that the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose.

*V. I. v. Mills*, 956 F.2d 443, 446, 27 V.I. 353 (3d Cir. 1992) (citing *Rock v. Arkansas*, 483 U.S. 44, 56, 107 S. Ct. 2704, 2711, 97 L. Ed. 2d 37 (1987)). We will discuss each of the three *Mills* factors, *in seriatim*, and conclude that none of the factors is applicable in Malone's case.

### B. Did the Trial Court Deprive Malone of the Opportunity to Present Evidence in his Favor?

To determine whether Malone's rights were violated, we must examine the contents of the recantation evidence. Essentially, the Daniel Brothers' recantations were spurious. They were replete with contradiction and were hardly favorable to Malone. The crux of the recantation claim is that:

> Akumba Daniel and Akeem Daniel stated that the reason for their visit to defense counsel's office was to inform Attorney Caffee that they testified falsely during the course of Malone's trial. They further stated that they had testified falsely because they had been threatened by counsel for the government with perjury charges, if they did not testify in favor of the People's case. In particular, Akumba Daniel stated that the Defendant Malone did not shoot him as is charged in the information. . . . Akumba said that he does not know who shot him, and that his identification of Defendant Malone in his testimony was the result of the threats made by counsel for the Government.

(Appellant's App. 44.)

Devon Davis, the Daniel Brothers' cousin, was also an eyewitness to Akumba's shooting. There is no evidence in the record before us to suggest that Devon had an obstructed view of Akumba's assailant when

Akumba was assaulted during daylight hours. Even though Devon did not know Akumba's assailant, he gave a clear description of Akumba's assailant to Detective Price. (Appellee's App. 25.) ("[Devon Davis] looked up and saw a black male with a white T-shirt and bald head coming towards them."). Detective Price used Devon's description of the assailant, together with Akumba's identification of Malone, to obtain an arrest warrant for Malone. Detective Price testified at trial, and the jurors assessed her credibility. The testimony of Detective Price conveyed to the jury the facts concerning Devon's opportunity to view the shooter and subsequent description of the shooter. Therefore, it is immaterial that in a subsequent recantation, Akumba stated that he does not know who shot him, because Devon Davis saw Malone when he shot Akumba. *See Borgess v. State*, 455 So. 2d 488, 490 (Fla. Dist. Ct. App. 1984) (the fact that the other witness did not recant is relevant); *see generally*, 58 AM. JUR. 2D *New Trial* § 346 (WL Update 2008). It does not escape importance that during daylight hours, and with Malone's face uncovered, he was readily identified as the shooter by both Devon and Akumba on the day of the shooting.

Significantly, Payne has not changed her prior statements to the police, even though she had the opportunity to recant her earlier statement to police, when she accompanied her sons to Attorney Benham's office. Payne told the police that prior to the shooting incident and during a telephonic conversation she had with Malone, he had made threats directed to Akumba, because of Malone's displeasure with Akumba's unflattering remarks about Malone's niece. Payne provided what appears to be the motive for the shooting. (*See* Appellee's App. 1-2.)

Both Daniel Brothers and their mother were interviewed by the police the same day Akumba was shot. In their written statements to police, both Daniel Brothers unequivocally identified Malone as the shooter, which was well before the subsequent involvement of the Department of Justice in the case. (*Id.* at 1-14.) Furthermore, these interviews with police occurred prior to any contact the People's counsel had with Akumba and Akeem. (*Id.* at 4, 8.) Therefore, Malone's claim that Akumba's identification of him was the result of threats made to Akumba by the People's counsel is demonstrably meritless and specious. Moreover, based on prior encounters with each other, Malone was no stranger to either of the Daniel Brothers. Therefore, they would have no difficulty in identifying Malone immediately following the shooting. Additionally,

their identifications of Malone were further buttressed by the fact that the shooting occurred in the daytime in contrast to at nighttime in a poorly lit area.

Akumba's "law office recantation" does not explain why the Daniel Brothers identified Malone as Akumba's assailant immediately following the shooting. His "law office recantation" does not explain how or why Akumba would forget the person who shot him. The traumatic nature of the event in which Akumba was shot by someone he knew would have made an indelible imprint on Akumba's memory, concerning his assailant's identity. The fact that Akumba's written statement to police was given on the day of the shooting and was given before Akumba was afforded an opportunity to ruminate any possibility of making fallacious statements about the shooting diminishes the credibility of a later recantation about the same shooting.

When Akeem's purported "law office recantation" is compared with his in-court testimony in which Akeem was available for possible cross-examination by Malone's counsel, who declined to cross-examine him, Akeem's "law office recantation" is overly general and too vague to have any impact on the jury's verdicts. According to Attorney Benham's affidavit, Akeem told Attorney Benham only that he had testified falsely during the trial, but does not indicate what parts of his testimony were false. (*See* Appellant's App. 44.) Akeem does not explain in his "law office recantation" why he decided to pursue Malone as his brother's assailant, immediately following the assault upon Akumba. Similarly, Akeem's "law office recantation" is silent on how he was able, in his trial testimony, to identify Malone as the person who discharged four gunshots at him and ran towards Pollyberg Hill, as Akeem pursued Malone immediately after Malone shot Akumba. (Trial Tr. Vol. I, 89, 93, Mar. 18, 2008.) At trial, Akeem testified in elaborate and extensive details about events surrounding the daytime encounter between him and Malone following the shooting of Akumba. (*Id.* 90-92.) For example, Akeem testified in graphic detail about the several streets on which he pursued Malone after the shooting, and how he threw stones at Malone during his "hot pursuit" of Malone, while shouting invectives at him for shooting his brother. (*Id.* 90-94.)

Significant parts of Akeem's trial testimony are congruous with his written statement he gave police in the afternoon of the day Akumba was shot. Akeem's testimony about his pursuit of Malone stands unimpeached

and unchallenged; it was never discredited at trial. Crucially, Malone's counsel did not cross-examine Akeem on the above aspect of Akeem's testimony, even though he was afforded the opportunity to do so. Therefore, it is extremely doubtful that if Akeem had returned to court and testified about his purported "law office recantation," that his later testimony would have changed the jury's guilty verdicts.

■ In considering whether Malone was deprived of the opportunity to present recantation evidence in his favor, we are mindful that Malone was not entitled to a hearing on his Motion based solely upon evidence of the Daniel Brothers' "law office recantations." As earlier stated, a motion to reopen a party's case based on recantation evidence, without more, does not automatically entitle the movant to relief. *See supra* Part V.A. Yet, the trial court delayed the day's proceedings until ten o'clock on the morning of March 24, 2008, to afford Malone's counsel the opportunity to secure the appearance of the Daniel Brothers in the courtroom. Without minimizing a defendant's right to compulsory process, we must note that "[e]very citizen . . . owes to his society the duty of giving testimony to aid in the enforcement of the law." *Piemonte v. United States*, 367 U.S. 556, 559 n.2, 81 S. Ct. 1720, 6 L. Ed. 2d 1028 (1961); *Reilly v. Atlantic City*, 532 F.3d 216, 228 (3d Cir. 2008) (noting citizens' obligation to testify). This principle applies to the Daniel Brothers, who were not in court a second time, although they had already testified in court and had been subject to cross-examination or available for cross-examination by Malone's counsel. Considering the circumstances in this case and where for unknown reasons the Daniel Brothers did not appear in court a second time, the trial court properly exercised its discretion and balanced the interests of the trial court against an indefinite continuation of the trial based upon Malone's proffer that the Daniel Brothers had testified falsely at his trial. To re-emphasize, both Akumba and Akeem testified as the People's witnesses and were available for cross-examination by defense counsel on their identification of Malone as the assailant, which is the precise subject-matter of their "law office recantations." (Appellee's Br. 13.) Therefore, the jurors had an opportunity to evaluate the credibility of both Akumba and Akeem, and to further evaluate Akumba's testimony concerning his recantations to the Attorney General.

■■ One aspect of the Daniel Brother's recantations gives us pause. The Daniel Brothers' purported recantations at Attorney Benham's law office were generated without the consent of their counsel. When the

Daniel Brothers' attorneys were apprised of their clients' communication with defense counsel, they wanted no further communications between their clients and defense counsel outside of their presence. (Appellant's App. 44-45.) Rule 4.2 of the ABA Model Rules of Professional Conduct prohibits a lawyer from communicating with a person the lawyer knows is represented by counsel.[9] Rule 4.2 is broad and applies even if the represented person initiated the contact, and where the lawyer negligently entered into the communication with the client. *Id.* Importantly:

> This Rule contributes to the proper functioning of the legal system by protecting a person who has chosen to be represented by a lawyer in a matter against possible overreaching by other lawyers who are participating in the matter, interference by those lawyers with the client-lawyer relationship and the uncounselled disclosure of information relating to the representation.

MODEL RULES OF PROF. CONDUCT R. 4.2 cmt. 1 (2007).

Although recantation evidence conveyed to defense counsel can be admissible evidence in a criminal case, it is not lost upon this Court that the Daniel Brothers are members of a class that this rule of professional conduct was designed to protect. It is noteworthy that based on the trial record before us neither Akumba nor Akeem generated an affidavit of recantation for Attorney Benham. Malone's failure to produce any affidavit by the Daniel Brothers on their "law office recantations" is sufficient grounds for the trial court to have denied his Motion. *See United States v. DiPaolo*, 835 F.2d 46, 50 (2d Cir. 1987) (citing *United States v. Ward*, 544 F.2d 975, 976 n.2 (8th Cir. 1976)); *see generally*, 58 AM. JUR. 2D *New Trial* § 346 (WL Update 2008). While Malone would not know the significance of securing the Daniel Brothers' "law office recantations" in an affidavit or sworn statement form, his counsel's law partner would

---

[9] Rule 4.2 provides that:

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

MODEL RULES OF PROF. CONDUCT R. 4.2 (2007). Pursuant to Rule 203 of the Rules of the Supreme Court of the Virgin Islands, this Court has adopted the ABA Rules of Professional Conduct and Rules of Disciplinary Enforcement for practitioners in the Virgin Islands.

certainly know the significance of securing the "law office recantations" in an affidavit to present to the trial court in support of Malone's Motion to Reopen the Defense Case.

■ The trial court had no reason to believe that having already testified, Akumba and Akeem would have testified a second time had they been served with subpoenas and had obtained the advice of counsel. An individual's right against self-incrimination overcomes another individual's right to compulsory process. *See Johnson v. United States*, 746 A.2d 349, 355 (D.C. 2000). In *Johnson*, the District of Columbia Court of Appeals reasoned that:

> The right of a defendant in a criminal trial to call witnesses in his own defense has been called "an essential attribute of our adversarial system, fundamental to a fair trial, and basic to due process of law." *Littlejohn v. United States*, 705 A.2d 1077, 1082 (D.C. 1997) (citations omitted). Nevertheless, that right is not absolute; in particular, it may be overcome when it "collide[s] with the Fifth Amendment right of a trial witness" to be free from compulsory self-incrimination. *Carter v. United States*, 684 A.2d 331, 335 (D.C. 1996) (en banc). "In the crunch, when all else fails, the Fifth Amendment privilege of the witness prevails over the defendant's right to compel him to testify." *Wilson v. United States*, 558 A.2d 1135, 1140 (D.C. 1989) (citations omitted).

*Id.*

■ The recantation evidence that Malone sought and upon which he based his appeal is essentially redundant and superfluous because the jury had already heard testimony about Akumba's earlier recantations. A crucial aspect of the Daniel Brothers' "law office recantations" is the following. If one scrutinizes paragraph eleven of Attorney Benham's affidavit, its substantive content is similar to the content of Akumba's May 22, 2007 and August 16, 2007 recantation letters to the Attorney General. (*See* Appellant's App. A-43-A-45; *see also*, Appellee's App. 22-23.) Both of Akumba's recantation letters to the Attorney General were admitted in evidence and available for scrutiny by the jurors. Therefore, if Akumba had returned to court to testify before the jury about his "law office recantation," such testimony would have been redundant because the same recantation information was already a part of the trial

426

record by the admission in evidence of his May 22, 2007 and August 16, 2007 letters to the Attorney General. Accordingly, there was no cogent or plausible reason for the trial court to further delay the trial by reopening the defense case to compel Akumba to testify and to produce what would be tantamount to cumulative evidence.

## C. Was the Daniel Brothers' Recantation Evidence Material and Favorable to Malone?

 Malone's counsel had argued before the jury that Akumba's pre-trial recantations of his identification of Malone should stand. Malone's counsel further argued to the jury that Akeem's testimony was unreliable because it supported Akumba's trial testimony. According to the trial judge, the crux of Malone's defense was the unreliability of Akumba's and Akeem's testimonies. (Appellant's App. 55.) However, "recanting affidavits and witnesses are viewed with extreme suspicion by the courts." *United States v. Adi*, 759 F.2d 404, 408 (5th Cir. 1985) (citing *United States v. Kearney*, 682 F.2d 214, 219, 220 U.S. App. D.C. 379 (D.C. Cir. 1982)); *Newman v. United States*, 238 F.2d 861, 862 n.1 (5th Cir. 1956). "Courts justifiably look upon after-discovered evidence or recantations with skepticism and suspicion and do not generally grant new trials based on such grounds." *Phillips v. People*, 51 V.I. 258, 280 (V.I. 2009).

This case is similar to *United States v. Adi*, 759 F. 2d 404, 409 (5th Cir. 1985). In *Adi*, June Lloyd ("Lloyd") was the government's chief witness. After Adi was convicted, Lloyd recanted, stating in an affidavit that his testimony was fabricated at the behest of government agents. *Id.* at 409. At the hearing on Adi's motion for a new trial, Lloyd failed to appear. *Id.* The trial court held that Lloyd's affidavit was cumulative, not new evidence, and therefore, not material. The United States Court of Appeals for the Fifth Circuit affirmed, correctly stating:

> In the case at bar, the district court judge had conducted the original trial and had observed the development of the case against Adi. Lloyd testified during the Government's case-in-chief and his testimony remained unshaken after cross-examination by defense counsel. During trial, the judge had the opportunity to observe Lloyd's demeanor and assess his credibility. . . . Upon the record before us, we conclude that the trial judge "was exceptionally qualified" to pass on the credibility

of Lloyd's recanting affidavit. *See United States v. Johnson*, 327 U.S. 106, 112, 66 S. Ct. 464, 466, 90 L. Ed. 562 (1946). The district court, therefore, did not abuse its discretion in denying Adi's motion for new trial.

*Adi*, 759 F.2d at 409. In like manner, the trial court heard all the testimony in this case and must have made a determination on the believability of the Daniel Brothers' "law office recantations" in its consideration of Malone's Counsel's Motion to Reopen the Defense Case. Moreover, Malone persistently ignores the pivotal fact that Akumba and Akeem testified during the Government's case-in-chief, and their testimonies remained unshaken after cross-examination of Akumba and the opportunity to cross-examine Akeem by defense counsel.

In *Minnesota v. Turnage*, 729 N.W.2d 593 (Minn. 2007), the court held that the defendant was not entitled to a new trial or an evidentiary hearing based on witnesses' recantation of testimony, unless the defendant could demonstrate that "without the . . . testimony, the jury might have reached a different conclusion." *Turnage*, 729 N.W.2d at 598 (quoting *Hooper v. Minnesota*, 680 N.W.2d 89, 96 (Minn. 2004)) (internal quotations omitted). Likewise, the trial court judge was "exceptionally qualified" to pass on the credibility of the Daniel Brothers' recantations. In *Bell v. United States*, 871 A.2d 1199 (D.C. 2005), the court held that, in ruling on a post-trial motion, "the trial judge who had heard the testimony of . . . the . . . witnesses at trial . . . was in a position to assess the credibility of the affidavit of recantation without an evidentiary hearing[.]" *Bell v. United States*, 871 A.2d 1199, 1201 (D.C. 2005). After commencing their deliberations, the jurors not only had the opportunity to review and scrutinize the quality and substance of Akumba's written recantation but to simultaneously compare the written recantations with Akumba's trial testimony, before deciding upon the guilty verdicts.

We underscore the following, which is central to the trial court's denial of Malone's Motion to Reopen the Defense Case. In Akumba's May 22nd, 2007 recantation letter to the Attorney General, he asserts that "at the time of the incident an individual in the area mistakenly pointed and identified . . . Arnold Malone . . . as the person who . . . shot me. I realized that Arnold Malone . . . was not the individual who shot me." The content of the May 22nd, 2007 letter, which to some degree has some common and substantive qualities with Akumba's purported "law office

recantation," was admitted in evidence and was available to the jurors to assist them in assessing Akumba's credibility and for their consideration during their deliberation on the verdicts. (Trial Tr., Vol. I, 171.) Similarly, Akumba's August 16th, 2007 recantation letter to the Attorney General was admitted in evidence and was also available to the jurors for their consideration. (*Id.*)

This case is unlike *Virgin Islands v. Mills*, 956 F.2d 443, 27 V.I. 353 (3d Cir. 1992). In *Mills*, a security guard identified a suspect from a photo album as the person he saw in a hotel lobby who likely committed a burglary. He gave a written statement to the police. But during the court proceedings, he realized that the suspect was actually "much taller and of larger build" than the man the security guard saw and identified from a photo album, and the security guard proffered to the U.S. Marshals that he would so testify. *See Mills*, 956 F.2d at 444 n.1. It was also revealed that the actual burglar had on a hat, which concealed some parts of his face. The trial court knew about the guard's recantation but did not tell the parties. The *Mills* court concluded that the guard's recantation was not cumulative and that it was material and favorable to the defense because it contradicted the only other identification of that defendant as the burglar. *Id.* at 446.

### D. Were the Trial Court's Denials of Malone's Motions Arbitrary and Served no Legitimate Evidentiary and Procedural Interest?

 The trial court's denial of Malone's request for compulsory process was not arbitrary but served the legitimate and procedural interest of excluding cumulative evidence. The exclusion from trial evidence of speculative and non-material evidence is an underpinning element of all laws of evidence. Therefore, the trial court's denial of compulsory process in this case served a legitimate purpose.

 The Daniel Brothers' recantations are akin to the recantation of the witness in *Adi*. They are dissimilar to the recantation of the witness in *Mills*. A defendant's right to compulsory process allows a defendant to compel the attendance at trial of *only* those witnesses who have information which is material, that is capable of affecting the outcome of the trial and that is favorable to the defense. *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S. Ct. 3440, 73 L. Ed. 2d 1193 (1982); *see also, United States v. Mejia-Uribe*, 75 F.3d 395, 399 (8th Cir. 1996). Therefore, "before a defendant is entitled to compulsory process,

the defendant must show that the testimony of the witness is both material and favorable to the defense." *Id.* (citations omitted). Malone is not entitled to compulsory process to compel the Daniel Brothers to testify a second time because he has not demonstrated that the alleged "law office recantation" of either Akeem or Akumba, or both, would have made a difference in the jury's verdicts. Accordingly, the trial court properly denied Malone's request for assistance in securing the appearance of the Daniel Brothers to testify concerning their "law office recantations."

## VI. CONCLUSION

We find no error by the trial court in denying Malone's request for compulsory process or request to subpoena Akumba and Akeem to appear in court to be examined about their "law office recantations." Therefore, we affirm the jury's verdicts and the trial court's judgment.